UNITED STATES of America,
Plaintiff-Appellant,

v.

Arnold F. HABIG and Jerome M.
Schroering, Defendants-Appellees.

No. 17409.

United States Court of Appeals
Seventh Circuit.

July 28, 1969.

Rehearing Denied Sept. 5, 1969.

See also D.C., 270 F.Supp. 929.

Mitchell Rogovin, Joseph M. Howard, Richard B. Buhrman, Attys., Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., K. Edwin Applegate, U. S. Atty., Indianapolis, Ind., for plaintiff-appellant.

Fred P. Bamberger, Evansville, Ind., John W. Houghton, Alan W. Boyd, Anton Dimitroff, Indianapolis, Ind., for appellees, Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and GRANT, District Judge.[1]

CUMMINGS, Circuit Judge.

This case arises on the Government's appeal under 18 U.S.C. § 3731 from an order suppressing certain evidence. In August 1966, defendants were indicted for attempting to evade the income taxes of four corporations and for aiding and assisting in the preparation of a fifth corporation's[2] false income tax return, in violation of Sections 7201 and 7206(2)

1. Chief Judge Grant is sitting by designation from the United States District Court for the Northern District of Indiana.

2. The five corporations, known as the Jasper Group, were the W. W. Kimball Company, Evansville Veneer & Lumber Co., Inc., The Jasper Corporation, Borden Cabinet Corporation and Lafayette Manufacturing Co., Inc.

of the Internal Revenue Code. Two years after the filing of the indictment, the defendants filed a motion to suppress the records of the five corporations that "were photocopied by agents of the Internal Revenue Service during the investigation by them of possible criminal violations of federal income tax laws by the defendants," and seeking the return of the photocopies. The ground for the motion was that the items were "illegally seized without search warrant, summons or subpoena being served upon or against either defendant." The supporting affidavits of each defendant asserted that:

> "approximately two years prior to the [August 12, 1966] date of the return of the indictments in this cause, agents of the Internal Revenue Service were seeking to obtain evidence for the purpose of criminally prosecuting him, but at no time was he ever informed or advised by any such agent that he was being investigated for criminal violations of the federal tax laws."

The Government denied the first of these allegations and also filed an affidavit of Revenue Agent Charles E. Lawrence. This affidavit disclosed that Lawrence was assigned to investigate the income tax returns of these five corporations in the early part of 1963. The affidavit also disclosed that the case was "subsequently" referred (by Lawrence) to the Intelligence Division of the Internal Revenue Service and that Special Agent Russell C. Hicks was assigned to the case. The date of his assignment was not revealed. The first meeting between Messrs. Hicks, Lawrence, and defendant Schroering (the comptroller of the corporations) occurred on September 21, 1964, and Schroering was then advised that Hicks was a special agent "assigned to determine if there was any criminal tax fraud in connection with

the returns being examined." A representative of the accounting firm for the corporations was also present at the meeting. The examination and photocopying of the corporate records were always pursuant to "the consent of a corporate officer or representative."

After the filing of these affidavits, the district court held an evidentiary hearing at which defendant Habig, the chairman of the boards of the five corporations, and Revenue Agent Lawrence were witnesses. At the hearing and again at oral argument before this Court, the Government conceded that the defendants had standing to question the copying of the corporate records. The district court found in substance as follows:

> Internal Revenue Service agents obtained certain records of the five corporations containing evidence material to the prosecution of the indictment against the defendants. These records were obtained without a search warrant, summons or subpoena. In March 1963, Revenue Agent Lawrence was assigned to examine the income tax returns of the five corporations "for civil liability." Through the public accounting firm representing the corporations, he was referred to defendant Schroering with respect to his dealings with the corporations.

> In late 1963, Lawrence referred the matter to the Intelligence Division of the Internal Revenue Service because he suspected criminal violations. Special Agent Hicks was subsequently assigned to make a criminal investigation of the returns, but the date of his assignment is unknown.[3] Lawrence did not advise the corporations or their accounting firm of his referral to the Intelligence Division. Hicks and Lawrence called on defendant Schroering and a representative of the accounting firm in late September

---

3. A second affidavit of Revenue Agent Lawrence was filed below in support of the Government's unsuccessful motion for rehearing. It shows that Lawrence referred the matter to the Intelligence Division on February 11, 1964, and that the case was assigned to Special Agent Hicks on March 27, 1964. This was confirmed by the affidavit of the Indianapolis chief of the Intelligence Division.

1964. At this meeting, the corporations first learned that their returns were being criminally investigated. The district court inferred that Lawrence fulfilled his duty to disclose to Hicks the evidence and leads acquired between late 1963 and September 1964. The court also inferred that the corporations' and defendants' consent to examine and copy corporate records after September 1964 would not have been given if the agents had "disclosed their conduct from late 1963 to September 1964."

On these findings, the trial court concluded that the records and leads were obtained while the Government was conducting a criminal investigation "during the period from late 1963 to September of 1964 but while the defendants and said corporations believed plaintiff was conducting a civil tax investigation due to the agent's [apparently Revenue Agent Lawrence] representations and his failure to advise them otherwise." The court further found that "defendants and the said corporations never consented to the search for the evidence for criminal investigation purposes during the period from late 1963 to September 1964." Accordingly, the court suppressed the photocopies of the corporate documents discovered by the Government during the one year period preceding the September 1964 meeting between Revenue Agent Lawrence, Special Agent Hicks, defendant Schroering, and the representative of the corporations' accounting firm. Also suppressed was all evidence obtained as the fruits of the investigation carried on during that period.

The briefs of the respective parties before this Court evidence a fundamental dispute as to the nature of the question presented by this case. The Government has elected to treat this case as a companion to United States v. Dickerson, 413 F.2d 1111, which was argued here on the same day. As in *Dickerson,* the Government argues that the suppressed evidence was not illegally obtained even if the defendants believed that the investigation was purely civil and even if the IRS agents did not advise defendants that the investigation had become criminal. Defendants strongly and repeatedly object to any such characterization of this case, arguing that the only question presented is whether the district court erred in holding that the Government had failed to sustain its burden of proving that the evidence in question was lawfully procured without the issuance of any search warrant or subpoena. Throughout the proceedings below counsel for defendants stressed the absence of "informed consent" as the fatal weakness in the Government's case.

A reading of the exhibits and the testimony received below demonstrates that the parties are not in disagreement that Agent Lawrence was in fact allowed to inspect various corporate records. The essential point of dispute, and the issue on which the district court's findings of fact turn, is whether such consent was vitiated when the purpose of the investigation shifted from civil to criminal. Viewed in this light, we are of the opinion that the issue presented for decision in the present case does depend upon the obligation of the IRS agents to inform the defendants of the purpose of their investigation and of the rights which attach to one under criminal investigation. Accordingly, this case will be considered in the light of the principles announced this day in United States v. Dickerson, 413 F.2d 1111.

■ In its principal brief, the Government admits that the suppression order was proper if United States v. Turzynski, 268 F.Supp. 847 (N.D.Ill. 1967) was correctly decided. In *Dickerson,* we have approved the rationale of the *Turzynski* case and have held that the advice of constitutional rights prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, must be given to taxpayers suspected of criminal violations "by either the revenue agent or the special agent at the inception of the first contact with the taxpayer after the case has been transfer-

red to the Intelligence Division" (413 F.2d at p. 1116).

 According to one of the supplemental affidavits filed by the Government (see note 3 *supra*), all the records covered by this suppression order were examined by Lawrence prior to his referral of the case to the Intelligence Division, and no leads from that material were obtained by him between the referral and the aforesaid September 1964 meeting. If the Internal Revenue Service obtained all this evidence and the leads prior to the first contact with the defendants after the February 19, 1964, reference to the Intelligence Division or if any evidence obtained illegally thereafter was merely duplicative, the suppression order may not stand. Since the above facts were presented by the Government by way of affidavits in support of a motion for rehearing which was denied by the district judge despite his apprehension about a possible miscarriage of justice, a determination of the precise order of events is impossible on the present state of the record. Therefore, without implying any criticism of the district court's disposition of the Government's rehearing motion, we have determined that the interests of justice require a remand for a further hearing in order to develop the facts necessary to the application of the standards subsequently announced in *Dickerson*.[4]

The order is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

FAIRCHILD, Circuit Judge (concurring in part, dissenting in part).

I agree that the suppression order should be vacated, but disagree with the direction to apply the *Dickerson* standards.

---

4. We have no occasion in this case to consider the possible abuse of our holding in *Dickerson* by unreasonably delaying the initial reference to the Intelligence Division in order to avoid the effect of the warnings which are required after such a reference is made. Defendants suggest that the findings below support an inference that Revenue Agent Lawrence continued his investigations in aid of the Special Agent, who remained unknown to defendants until the September 1964 meeting. Such an inference depends on the actual chronology of events, which may be affected by the findings to be made on remand.