**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Albert DICKERSON, Defendant.**

**No. 17349.**

United States Court of Appeals Seventh Circuit.

July 28, 1969.

Rehearing Denied Sept. 5, 1969.

Thomas A. Foran, U. S. Atty., Chicago, Ill., Johnnie M. Walters, Asst. Atty. Gen., Joseph M. Howard, Richard B. Buhrman, Mitchell Rogovin, Joseph M. Howard, Attys., Dept. of Justice, Tax Division, Washington, D. C., for appellant.

William A. Barnett, Chicago, Ill., for appellee; William R. Quinlan, Chicago, Ill., of counsel.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and GRANT, District Judge.[1]

CUMMINGS, Circuit Judge.

In April 1967, defendant was indicted for failure to file income tax returns for 1960, 1961 and 1962 in violation of Section 7203 of the Internal Revenue Code (26 U.S.C. § 7203). In March 1968, claiming a violation of his rights under the Fourth and Fifth Amendments, he filed a motion for the return of certain property and for the suppression of evidence. The motion was based on the admitted failure of the Internal Revenue Agents to warn him of his constitutional rights during five interviews with him.

Based on an affidavit of defendant and the testimony of Revenue Agent Donald Petrovic at the hearing on the motion to suppress, the district court found that while "auditing" a scavenger company Petrovic found an entry on its books reflecting a large payment to defendant but that the company had filed no related information return. Consequently in July 1964, Petrovic "audited" defendant, who admitted that he had failed to file certain income tax returns. Late that year Petrovic referred the case to his superiors to determine if the case warranted criminal investigation. In January 1965, the case was assigned to Special Agent Cornue, an investigator for the Intelligence Division of the Internal Revenue Service. The jurisdiction of the Intelligence Division is limit-

1. Chief Judge Grant is sitting by designation from the United States District Court for the Northern District of Indiana.

ed to criminal investigations. Petrovic was assigned to assist Cornue. Their joint investigation began on March 24, 1965, with a visit to defendant at his place of business. On that occasion, Cornue identified himself as a Special Agent but did not advise defendant that the investigation had become criminal, nor was defendant advised of any of his constitutional rights. Petrovic and Cornue again saw defendant on May 7, 1965, and Cornue alone interviewed defendant on March 29, April 1, April 6 [2] and June 24, 1965.

Cornue's affidavit in support of the Government's motion for reconsideration showed that at the June 24, 1965 interview, defendant said he had engaged a lawyer and had given him "everything he could find that had anything to do with his income tax." Defendant's lawyer was present when defendant was next interviewed by both agents on November 10, 1965.

The Government's brief concedes that the indictment resulted from the information gathered at five of the earlier interviews. These are the occasions when, according to his affidavit, defendant answered the agents' questions and furnished them with documentary and oral information. This affidavit claims that the records surrendered to the agents consisted of personal records of income and expenses, including the names of customers and names of persons to whom commission payments were made.

Relying on Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the dis-

trict court held that "at and from the time a criminal investigation is launched against a taxpayer," IRS Agents are required to inform him of his right to remain silent, that anything he says may be used against him, and that he has a right to counsel. The *Escobedo* opinion was handed down before the civil or criminal investigations of defendant's tax returns had begun, and *Miranda* was handed down more than a year after the crucial interviews. However, the district court noted that *Miranda* is applicable to all cases filed (as here) after its promulgation.

Applying the *Miranda* rationale, the trial court held that the evidence obtained from defendant during the criminal investigation and before his retention of counsel would have to be suppressed, along with any evidence obtained as a result of information gained during that phase of the criminal investigation. 291 F.Supp. 633. The Government appealed under Title VIII of the Omnibus Crime Control Act (18 U.S.C. § 3731).[3] We affirm.

Both parties seek to find support for their positions in the *Miranda* decision, the Government stressing the physical custody in which the interrogations involved in *Miranda* and its companion cases took place and defendant laying heavy emphasis on the policies underlying the adoption of the *Miranda* warnings. We recognize the factual limitations of the precise holding in *Miranda*. On the other hand, we cannot accept an interpretation of that decision which would restrict the implementation of the Court's overriding concern with

2. The April 6 interview is identified in Special Agent Cornue's affidavit of November 5, 1968.

3. Taxpayer asserts that 18 U.S.C. § 3731 violates his rights to due process and a speedy trial insofar as it permits the Government to appeal from an adverse ruling on a motion to suppress. This point was not pressed at oral argument, and, in light of our disposition of the principal issue presented in the taxpayer's favor, does not merit extended treatment here. Far from suggesting a lack

of legislative power to authorize such interlocutory appeals, Carroll v. United States, 354 U.S. 394, 407, 77 S.Ct. 1332, 1 L.Ed.2d 1442 relied on by the taxpayer here, decided only that such appeals were not authorized by statutes then in force. The Court noted, "If there is serious need for appeals by the Government from suppression orders * * * it is the function of the Congress to decide whether to initiate a departure from the historical pattern of restricted appellate jurisdiction in criminal cases."

the opportunity for intelligent exercise of constitutional rights to interrogations conducted in police stations. Indeed, the opinion makes clear that the privilege against self-incrimination is imperiled when one "deprived of his freedom of action in any significant way" (384 U.S. at pp. 444, 445, 467, 477, 478, 86 S.Ct. at p. 1612) is subjected to interrogation without being apprised of his right to remain silent, the consequences of a decision to forgo that right, and the right to the presence of an attorney, retained or appointed, to assist in making that decision. And the Court has recently confirmed that these warnings are required prior to interrogating a suspect in his own bedroom if it appears he is not free to go where he pleases. Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311.[4]

■ Intelligent exercise or waiver of the Fifth Amendment privilege is the heart of the Court's concern in *Miranda*. See 384 U.S. at pp. 475–476, 86 S.Ct. 1602. The Government's brief appears to recognize that ignorant compliance with the requests of the authorities can no longer be equated with a valid waiver of constitutional rights.[5] We understand the teaching of *Miranda* to be that one confronted with governmental authority in an adversary situation should be accorded the opportunity to make an in-

telligent decision as to the assertion or relinquishment of those constitutional rights designed to protect him under precisely such circumstances. No contention is made that the privilege against self-incrimination does not protect one interrogated in a non-custodial setting, only that one in such circumstances has no need of advice as to his rights, or, indeed, of the pendency of a criminal investigation at all. But custodial interrogation is merely one variety of confrontation, albeit one requiring the most stringent of protections for the criminal suspect. The inquiry does not end with custody or its absence. See Hewitt, "The Constitutional Rights of the Taxpayer in a Fraud Investigation," 44 Taxes 660, 668 (1966).

In this Circuit, the district courts recently considering the question have uniformly held that some form of warnings must be given by IRS agents once an investigation has shifted to one criminal in nature, despite the absence of physical custody.[6] The Government has drawn to our attention numerous cases in this and other Courts of Appeals which are said to establish that *Miranda* has no application to criminal tax investigations. Our examination of those and other cases decided after *Miranda* reveals that in almost every instance some warnings were in fact given,[7] an attorney was present

---

4. The opinion does not appear to depend upon a formal arrest, and no mention is made of whether Orozco in fact knew that he was not free to leave.

5. Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448, and Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090, are cited as "prior law."

6. United States v. Turzynski, 268 F.Supp. 847 (N.D.Ill.1967); United States v. Dickerson, 291 F.Supp. 633 (N.D.Ill. 1968); United States v. Habig, No. IP 66–CR–138 (S.D.Ind. Nov. 19, 1968) (unreported); United States v. Lackey, Lafayette Criminal No. 177 (N.D.Ind. Oct. 2, 1968) (unreported); United States v. Townsend, No. IP 65–CR–115 (S.D.Ind. Sept. 14, 1966) (unreported). To the same effect, see Goodman v. Unit-

ed States, 285 F.Supp. 245 (C.D.Cal. 1968); United States v. Wainright, 284 F.Supp. 129 (D.Colo.1968); United States v. Gower, 271 F.Supp. 655, 660 (M.D.Pa.1967); United States v. Kingery, 67–1 U.S.Tax Cas. ¶ 9262 (N.D. Fla.1967); United States v. Schoenberg, 67–1 U.S.Tax Cas. ¶ 9393 (D.Ariz. 1966). See also United States v. Guerrina, 112 F.Supp. 126 (E.D.Pa.1953), modified, 126 F.Supp. 609 (E.D.Pa. 1955).

7. *E. g.*, United States v. Mansfield, 381 F.2d 961 (7th Cir. 1967), certiorari denied, 389 U.S. 1015, 88 S.Ct. 593, 19 L.Ed.2d 661; Muse v. United States, 405 F.2d 40 (8th Cir. 1968); United States v. Mackiewicz, 401 F.2d 219 (2d Cir. 1968); United States v. Squeri, 398 F.2d 785 (2d Cir. 1968); Spinney v. United States, 385 F.2d 908 (1st Cir. 1967),

during the crucial interviews,[8] or the absence of physical custody was considered determinative.[9] We recognize, of course, that language appears in many of these cases which is inconsistent with the conclusion which we reach today. We therefore turn our attention to the asserted distinctions which are said to render the *Miranda* concern that any incriminating statements elicited from a suspect should be "truly the product of free choice" (384 U.S. at p. 457, 86 S.Ct. 1619) inapplicable to criminal investigations by the IRS.

A line of cases originating between the *Escobedo* and *Miranda* decisions, notably Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), reasons that because the IRS agents cannot determine whether a crime has in fact been committed until their investigation is complete, the adversary process has not sufficiently "focused" on the suspect as to require that warnings be given. But as Judge Will observed in his persuasive opinion in United States v. Turzynski, 268 F.Supp. 847, 852–853 (N.D.Ill.1967):

> "This distinction between a criminal tax investigation where the taxpayer is suspected of a tax fraud not yet fully identified and a criminal investigation where a known violation of the law is attempted to be linked to a particular suspect is logically irrelevant for purposes of determining when the adversary process has begun, *i.e.*, when the investigative machinery of the government is directed toward the ultimate conviction of a particular individual, and when, therefore, a suspect should be advised of his rights. What matter if the culprit be known before the crime or the crime before

the culprit. In either case the investigator is attempting to develop evidence for the purpose of criminal prosecution and conviction."

Nor can the *Kohatsu* rationale, once accepted, be limited to investigations in the tax area. Such a rationale would apply to most white collar crimes and any other crimes where the identity of the suspected lawbreaker is not in issue. This category might include unauthorized practice of law, attempted bribery, impersonation of a federal officer, refusal to report for induction, violations of Section 5 of the Securities Act, the Landrum-Griffin Act, and the Sherman Act, among others. No principled distinction has been suggested which would carve out such exceptions to the policies expressed in *Miranda*.

Such a distinction cannot survive the Supreme Court's desision in Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381, where the Government sought to escape the application of *Miranda* to an interrogation of a taxpayer incarcerated for an unrelated offense because the questions were asked as a part of a routine tax investigation where criminal proceedings might never be brought. Noting that "tax investigations frequently lead to criminal prosecutions," just as the one here did, (391 U.S. at p. 6, 88 S.Ct. at p. 1506), the Court rejected any such distinction as "too minor and shadowy" to warrant a departure from *Miranda*.

The Government argues that the absence of custodial detention and other indicia of criminal prosecution in the tax fraud investigation negatives any possibility of coercion or overbearing of

certiorari denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981; United States v. Maius, 378 F.2d 716 (6th Cir. 1967), certiorari denied, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219; Morgan v. United States, 377 F.2d 507 (1st Cir. 1967).

8. *E. g.*, United States v. Mancuso, 378 F.2d 612 (4th Cir. 1967), certiorari denied, 390 U.S. 955, 88 S.Ct. 1051, 19 L.Ed.2d 1149; United States v. Fidanzi, 411 F.2d 1361 (7th Cir. June 23, 1969).

9. *E. g.*, Hensley v. United States, 406 F.2d 481 (10th Cir. 1968); Cohen v. United States, 405 F.2d 34 (8th Cir. 1968), certiorari denied, 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478; Morgan v. United States, *supra*, note 7; Spahr v. United States, 1969 CCH Tax Cas. ¶ 9316 (5th Cir. April 2, 1969).

the taxpayer's will. But it is the very fact that the taxpayer is not informed of the pendency of a criminal investigation which aggravates the dilemma in which he finds himself. Unaware of the possible consequences of his cooperation with the agents, he may nevertheless believe that he is obligated to supply the necessary information in order to satisfy any possible tax deficiency which he may owe. As the district judge observed (291 F.Supp. at pp. 636–637):

> "It would seem to us that the average citizen, faced with repeated questioning by two government agents is in an ominous situation to say the least. The Government suggests that the defendant was in no way physically restrained, but we doubt that he really felt free to walk out on the investigators from the Internal Revenue Service. In the absence of sufficient warnings and the assistance of counsel, there are innumerable factors which act on the taxpayer's mind compelling him to 'co-operate' with the federal authorities."

Only the rare taxpayer would be likely to know that he could refuse to produce his records to IRS agents. Nor would he be likely to make any distinction between revenue agents and special agents without some explanation as to the different functions of these two offices. As noted in Lipton, "Constitutional Rights in Criminal Tax Investigations," 45 F.R.D. 323, 336 (1968), the pressures on the uninformed taxpayer to cooperate with the agents are considerable:

> "First, there is always the fear of incurring a civil tax liability that hopefully might be avoided by cooperation. Also, a taxpayer may conclude that lack of cooperation will result in unwanted publicity about a tax liability. *The average citizen, moreover, believes that the government prosecutes only the recalcitrant, uncooperative individual who is un-*

*willing to pay what he owes.* Who would believe the ironic truth that the cooperative taxpayer fares much worse than the individual who relies upon his constitutional rights!" (Emphasis supplied.)

■ Incriminating statements elicited in reliance upon the taxpayer's misapprehension as to the nature of the inquiry, his obligation to respond, and the possible consequences of doing so must be regarded as equally violative of constitutional protections as a custodial confession extracted without proper warnings. Cf. Gouled v. United States, 255 U.S. 298, 305–306, 41 S.Ct. 261, 65 L.Ed. 647; United States v. Guerrina, 112 F.Supp. 126 (E.D.Pa.1953), modified, 126 F.Supp. 609 (E.D.Pa.1955); Comment, "Constitutional Rights of the Taxpayer in a Tax Fraud Investigation," 42 Tul.L.Rev. 862, 864–865 (1968).

Under such circumstances it is imperative that the taxpayer be advised that he is the subject of a criminal investigation and that he need not answer questions put to him by the agents. "For those unaware of the privilege, the warning is needed simply to make them aware of it—the threshold requirement for an intelligent decision as to its exercise." Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694. The rationale behind the warning as to the consequences of waiving the right to remain silent, as expressed in *Miranda,* is particularly apt to the present situation, for "this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest." 384 U.S. at p. 469, 86 S.Ct. at p. 1625. As in *Miranda,* we deem advice as to the right to have counsel present a valuable adjunct to the protections of the Fifth Amendment prescribed above.

■■ Our conclusion is that *Miranda* warnings must be given to the taxpayer by either the revenue agent [10] or the

---

10. In *Mathis,* the Supreme Court required a revenue agent to give the warnings upon first questioning the taxpayer, even though no "full-fledged criminal investi-

special agent at the inception of the first contact with the taxpayer after the case has been transferred to the Intelligence Division.[11] We have reached this conclusion on the basis of our examination of the circumstances surrounding criminal tax investigations generally, and we find that the objective circumstances of such confrontations with government authority warrant the above warnings without regard to the individual taxpayer's subjective state of mind.[12] Absent such warnings, the motion to suppress in the present case was properly granted.

In recognition of the fact that this holding represents a departure from the present state of the law,[13] and a new implementation of the *Miranda* policy, and in accordance with the criteria set forth in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199, we have determined that this decision should be given a prospective application. In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, *Miranda* was applied only to cases in which the trial began after the date of the *Miranda* decision. However, as the Court noted

in a more recent case involving a special aspect of the retroactivity of *Miranda,* the approach of the Court to prospective decision-making has undergone some modification since *Johnson* was decided. See Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (June 2, 1969). In conformity with the more recent practice as developed in *Stovall, supra,* and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248, we have determined to apply our holding to interrogations taking place after the date of this decision. See Schaefer, "The Control of 'Sunbursts': Techniques of Prospective Overruling," 42 N.Y.U.L. Rev. 631, 646 (1967); Fairchild, "Limitation of New Judge-Made Law to Prospective Effect Only: 'Prospective Overruling' or Sunbursting," 51 Marq.L.Rev. 255, 265 (1968). The defendant in the companion *Habig* case, which was argued together with the instant case, will also be entitled to the benefit of today's holding. However, it is not our intent to disturb previously ordered suppressions of evidence anticipating our holding today. See Desist v. United States, 394 U.S. 244,

gation" was begun until eight days later. See 391 U.S. at p. 4, 88 S.Ct. 1503, 20 L.Ed.2d 381. There the suspect was in custody for an unrelated offense. Mindful of the disruptive effect which a blanket requirement of warnings might have if applied to all civil investigations, we have determined that the inception of the first contact with the taxpayer after referral to the Intelligence Division is the appropriate point at which to require the *Miranda*-type warnings outlined above.

11. See Andrews, "The Right to Counsel in Criminal Tax Investigations Under Escobedo and Miranda: The 'Critical Stage,'" 53 Iowa L.Rev. 1074, 1085–1087, 1111, 1116–1117 (1968); Comment, "Constitutional Rights of the Taxpayer in a Tax Fraud Investigation," 42 Tul.L.Rev. 862, 870 (1968).

12. Thus there is no conflict in this respect with United States v. Spomar, 339 F.2d 941 (7th Cir. 1964), certiorari denied, 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270, on which the Government has so heavily relied. Moreover, that was a pre-*Miranda*

case, and the defendant did not contend that revenue agents had the duty to advise him of his right to refuse to furnish the requested information (339 F.2d at p. 942).

13. We are informed that since May 1967 the Internal Revenue Service has required special agents to give a modification of the *Miranda* warnings to taxpayers at the first interview. See United States v. Turzynski, 268 F.Supp. 847, 854 (N.D. Ill.1967). The November 1967 instructions to special agents are reproduced in United States v. Wainright, 284 F.Supp. 129, 133 (D.Colo.1968). These instructions were somewhat amplified in November 1968 according to IRS News Release IR–949 (1969 CCH Fed.Tax Rptr., ¶ 6946).

This recent administrative practice, characterized as an act of grace at oral argument, diminishes the impact of our holding today, but does not, in our view, obviate the responsibility of this Court to render judgment in accordance with our understanding of the intendment of *Miranda*.

259, 89 S.Ct. 1048, 22 L.Ed.2d 248 (Harlan, J., dissenting).

Affirmed.

FAIRCHILD, Circuit Judge (dissenting).

The *Miranda*[1] equation is that official questioning of one who is in custody or deprived of his freedom of action in any significant way equals compulsion to answer unless the *Miranda* warnings or other effective means are used to insure absence of compulsion. Underlying its pronouncement were years of judicial experience with the frustrations of case by case decision as to the voluntariness of statements given by persons in police custody (most often state or local). *Mathis*[2] and *Orozco*[3] decide that the equation is valid in the particular situations considered, but do not suggest that compulsion to answer is to be presumed in situations where the person is not in custody or deprived of freedom of action.

It is compulsion to answer which offends against the fifth amendment provision that no person shall be compelled in any criminal case to be a witness against himself. *Miranda* decided that one in custody or deprived of freedom of action and questioned by an officer is subjected to such pressure to answer that the warnings are required in every instance.

This court is now deciding, essentially, that the official character of the revenue agent makes compulsion to answer his questions so probable that the warnings are required to prevent it. Yet the court distinguishes between the revenue agent before IRS has internally decided to consider prosecution and the revenue agent or special agent after such decision.

If a violation of the fifth amendment is really involved, I assume there are types of state agents as well as other types of federal agents who will be reached by this decision.

I think that candor on the part of a special agent who is seeking incriminating evidence is good governmental policy, and, as noted in Judge Cummings' able opinion, the IRS has decided as a matter of policy that warnings should be given. It may well lie within federal judicial power to decide to exclude evidence obtained without such candor. But I do not believe the fifth amendment requires it.

1. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

2. Mathis v. United States, (1968), 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381.

3. Orozco v. Texas (1969), 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311.