**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Adolph J. WAITKUS, Defendant-Appellant.**

**No. 71–1568.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1972.

Decided Oct. 31, 1972.

Rehearing Denied Nov. 27, 1972.

Certiorari Denied Feb. 20, 1973. See 93 S.Ct. 1368.

Maurice J. Walsh, Carl M. Walsh, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Mary L. Sfasciotti, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and PELL and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendant Adolph J. Waitkus was charged in a five-count indictment returned March 27, 1969, with willful and knowing evasion of his federal income tax for the years 1962, 1963, 1964, 1965 and 1966, in violation of Title 26, United States Code, Section 7201.[1] On October 19, 1969, defendant filed a motion pursuant to Rule 41(e), Federal Rules of Criminal Procedure, Title 18, U.S.C.A., to suppress the evidence obtained in the course of the investigation of his tax returns and for the return of the seized

---

1. Section 7201 provides:

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

property. A hearing was held on such motion October 29, 1969. Following the submission of memoranda by both parties, on January 15, 1970, the trial court ruled orally from the bench and denied defendant's motion to suppress and to return seized property.

Subsequently, on September 30, 1970, defendant filed a written waiver of his right to trial by jury, which was consented to by the United States Attorney and approved by the trial court. The case was tried to the court upon a written stipulation and memoranda. On June 4, 1971, the court entered its "Decision on the Merits" finding defendant guilty on each of the five counts of the indictment. Motions by defendant for judgment of acquittal notwithstanding the finding, or in the alternative for a new trial and in arrest of judgment, were denied. On July 2, 1971, the court sentenced defendant to the custody of the Attorney General for a period of two years on each of the five counts, such sentences to run concurrently.

Defendant presents two issues for our review. First, whether the trial court erred in denying defendant's motion to suppress evidence based upon his claim that he was denied due process of law by the Internal Revenue Service through the alleged failure of its special agents to properly and timely inform him of his rights to silence and counsel during the stages of the conduct of a criminal investigation. Second, whether we should broaden our ruling and holding in United States v. Dickerson, 7 Cir., 413 F.2d 1111 (1969).

Defendant, a pharmacist, owned and operated a retail drug store in Chicago Heights, Illinois, for a number of years, including the years 1966 and 1967. He personally filled all prescriptions for drugs and medicines received from doctors. Although indisputably misrepresenting at all stages of the investigation and trial that his tax returns under review correctly stated his gross income and taxable income and that all his expenditures came solely from his store in-

come, nevertheless defendant became a man of substantial means. Illustrative of this was that, among other things, he acquired a home of the present value of $100,000 free of debt; stock in several hundred corporations and numerous accounts in various banks and savings and loan associations; $100,000 in United States Treasury bills; his store business and inventory; a $30,000 interest in a family mausoleum; $100,000 in life insurance with annual premiums of $6,000; new Cadillac automobiles for himself and his wife; and a new car for his son and a used car for his store business. In addition, defendant claimed he paid all educational and living expenses for his family from the same source.

This leave us, of course, with the two critical questions of the admissibility of the evidence establishing such facts, now raised on appeal.

I

Upon consideration of the motion to suppress and for return of seized property in a hearing held on October 29, 1969, the trial court had for consideration exhibits A, B, C, D, E, F and G attached to the motion, the Government's answer thereto, the testimony of Special Agents Shurtleff and Barrett of the Internal Revenue Service, Intelligence Division, a number of documentary exhibits and post-hearing memoranda filed by both parties. As previously noted, the trial court orally ruled from the bench on January 15, 1970, denying defendant's motion.

Exhibit A to such motion was the memorandum of interview of defendant by Agents Shurtleff and Barrett on August 8, 1966, in defendant's drug store. Exhibit B was the memorandum of interview of defendant by Agents Shurtleff and Barrett and Revenue Agent Edward C. Carey on September 19, 1967, in defendant's drug store. Exhibit C was the memorandum of interview by Agents Carey and Shurtleff on November 29, 1967, in the Internal Revenue of-

fices at Joliet, Illinois. Exhibit D is a transcript of certain testimony of defendant taken during the November 29, 1967, interview and transcribed by a reporter from a tape recording. Exhibit E was a memorandum of interview of defendant by Agents Carey, Shurtleff and Barrett on July 3, 1968, in defendant's drug store. Exhibit F was a memorandum of telephone conversation between defendant and Agent Shurtleff on July 12, 1968. Exhibit G was a memorandum of interview of defendant by Agents Carey, Shurtleff and Barrett on November 21, 1967, in defendant's drug store.

Based upon all matters submitted to the trial court for its consideration of the motion to suppress and for return of seized property, the trial court would have been justified in believing the following factual narrative to be true.

On August 8, 1966, Special Agents Shurtleff and Barrett called on defendant at his drug store, presented their credentials and identified themselves to defendant as special agents of the Intelligence Division, Internal Revenue Service. They advised defendant that they were there to make an investigation of his federal income tax returns for the years 1962 through 1965. Defendant took them to the rear of his store for the interview, stating that "everything is alright, and we have nothing to worry about." Defendant was then questioned about his 1962, 1963 and 1964 returns. He stated they contained all of his income and expenses and there were no changes to be made, and that his returns had been prepared by John G. Zarante of Chicago Heights, a bookkeeper who maintained his records. Defendant told about his family, his business, his bank debts, his home, automobiles, life insurance, bank and several savings accounts and about $7,000 or $8,000 of stock in "AT&T" and "Illinois Bell Telephone" purchased through Merrill Lynch, Pierce, Fenner & Smith. He was asked to explain some of the entries in and apparent omissions from his tax returns. When defendant's answers proved unsatisfac-

tory, the agents then advised him they would have to make a thorough examination because they could not understand how defendant could operate on the income he was reporting. Defendant became somewhat agitated and said he had not been guilty of any larceny or thieving and had no "criminal intent" and that there was nothing wrong with his tax returns. He was asked if his records were where they could be examined and he said he did not know. He said he would try to get his records together that night at home so they could examine them the next day. He gave the agents some of his prescription record books and agreed that they might take them to their office for examination.

The agents returned to defendant's drug store again on August 9 and 12, 1966. No memoranda of these interviews were made but the agents obtained additional documents from defendant. The details of the August 8, 1966, memorandum of interview made it quite clear that the special agents immediately identified themselves to defendant and that defendant was aware of who they were and of their purpose in visiting him.

The defendant was not contacted again until more than a year later, on September 19, 1967, when the agents returned to defendant's drug store. They again identified themselves and informed defendant fully of his constitutional rights, including his rights to silence and counsel before he answered any questions, adding that this was now a serious matter and could result in criminal action. Nevertheless, defendant stoutly maintained that everything he did was correct, that he had nothing to hide and was not afraid to answer any questions and would gladly do so and *that he did not want any attorney.* The examination then began. Defendant's bookkeeper, Zarante, was called to the store and stated he only reported the information in the returns that defendant had given him and that he was never permitted to see defendant's cancelled checks or bank statements. Zarante

said he had mentioned to defendant many times that he could not understand how defendant could live on such a small amount of income. Zarante urged defendant to tell the truth, stating to him that this was a criminal fraud investigation. Defendant stoutly maintained he had reported all of his income.

At a brief third visit at the drug store on November 21, 1967, defendant agreed to come to the office of the Internal Revenue Service at Joliet, Illinois, on November 29, 1967, for a further interview. At this office interview the agents read to defendant a full and complete statement of his constitutional rights and began taping on a recorder the question and answer proceeding. Defendant objected to the tape recording and it was cut off. The interview then proceeded off the record.

We need not further detail the record of the interviews and exhibits to the motion to suppress and return.

Defendant complains that the Internal Revenue Service did not follow its own rules directing its special agents who are conducting a criminal investigation to inform taxpayers of their rights to silence and counsel. This, of course, is a reference to a regulation promulgated on October 3, 1967,[2] concerning the warnings to be given by its special agents, as required by the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 467–473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■ The interviews in August 1966 and on September 19, 1967, were conducted prior to the promulgation of the subject regulation on October 3, 1967. Obviously, we may not make the regulation retroactive to these interviews. Further the special agents did all they were required to do at the August 1966

interviews in light of the prevailing practice at that time. Defendant was made aware of the identity of the agents and the purpose of their first call, and said, "I know, I know." At the outset of the September 19, 1967, interview defendant was advised of his rights to silence and counsel and several times was further warned that the investigation was criminal in nature. Defendant emphatically stated he did not want a lawyer and willingly answered questions and furnished some of his records. Applying the *Miranda* rationale and that of countless other cases stemming from it, we find no showing that defendant was in custody or was deprived of his freedom of action in any significant way at the inception of his first contact with the special agents. Under all the circumstances surrounding the prior interviews in August 1966 and September 1967, we see no basis for finding a denial of due process to defendant. *Cf.*, Cohen v. United States, 8 Cir., 405 F.2d 34 (1968), cert. denied, 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478 (1969).

At the November 29, 1967 office interview, defendant protested that he had not been previously advised of his rights to silence and counsel by *a formal reading* of such rights to him. It developed that his real objection was to having the interview recorded on tape and that defendant did not want to answer any questions as long as they were being recorded on tape. He did not affirmatively state he was unwilling to proceed without any attorney. When the tape recorder was cut off at that time, defendant freely cooperated with the agents and the interview was continued.

We conclude that defendant was never misled or in doubt as to the purpose of the investigation at the time of the first

---

2. The Internal Revenue Service News Release No. 897, October 3, 1967, provides in pertinent part:
   "On initial contact with a taxpayer, Internal Revenue Service Special Agents are instructed to produce their credentials and state: 'As a Special Agent, I have the function of investigating the possibility of criminal tax fraud.' If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is required to advise the taxpayer of his Constitutional rights to remain silent and to retain counsel."

contact of the special agents with him; that he was timely and properly warned of the criminal nature of the investigation as it passed into the accusatorial stage of the proceeding; that he was given full-dress *Miranda* warnings from the time on November 29, 1967, when the obligation to do so first arose; that the constant pattern of defendant's conduct during the entire investigation was to proceed without counsel and to cooperate voluntarily until the investigation was closed; and that defendant has wholly failed to establish any tenable basis to show a denial of due process.

We hold, therefore, that the trial court did not err in denying defendant's motion to suppress and return seized property.

## II

In United States v. Dickerson, 7 Cir., 413 F.2d 1111, 1116–1117 (1969), we held that without regard to a taxpayer's subjective state of mind, *Miranda* warnings must be given to a taxpayer under criminal investigation by either the revenue agent or the special agent at the inception of the first contact with taxpayer after the case has been transferred to the Intelligence Division of the Internal Revenue Service, and that absent such warning and advice, the documentary and oral information obtained from the taxpayer by the agents was subject to suppression.

■ Recognizing that this ruling represented a departure from the present state of the law and a new implementation of the *Miranda* policy, our court determined that this decision should be made prospective only "to interrogations taking place after the date of this decision [July 28, 1969]." *Id.* at 1117. Defendant would have us broaden the holding in *Dickerson* so that it "should at least be made prospective only to cases in which the trial started after the decision in *Dickerson*." In effect, defendant urges that we substitute the date of the trial for the date of interrogations. Obviously, this would bring Waitkus under the umbrella of *Dickerson*. This we shall not do.

In United States v. Gallagher, 7 Cir., 430 F.2d 1222, 1224 (1970), in an opinion authored by Judge Cummings, who spoke for our court in *Dickerson*, we again expressly limited *Dickerson* to interrogations taken after the date of that decision. Recently, in United States v. Ming, 7 Cir., 466 F.2d 1000, 1008 (1972), cert. denied, 409 U.S. 937, 93 S.Ct. 245, 34 L.Ed.2d 190 (1972), we again saw "no need to re-examine our limited prospective application of *Dickerson*," and held that since the interrogations took place *before* our decision in *Dickerson*, the defendant Ming was not entitled to its application there.

For the third time, therefore, we respectfully decline to broaden our holding in *Dickerson*.

---

■ In sum, we quote with approval from the memorandum opinion of Chief Judge Robson:

"With respect to each count of the indictment, the court finds beyond a reasonable doubt that the defendant willfully and knowingly attempted to defeat and evade payment of a substantial portion of the income tax he owed to the Government. The uncontradicted evidence reveals a consistent pattern of gross understatement of income and overstatement of expenses. The evidence further reveals that the defendant lied to agents of the Internal Revenue Service with respect to his ownership of securities. * * * As well documented by the uncontroverted evidence, the defendant secreted most of his income from the Government for the five years in issue. Under the circumstances shown here, it is clear that the defendant acted knowingly and wilfully in order to avoid paying the major portion of his tax liability. *See* United States v. Mansfield, 381 F.2d 961 (7th Cir. 1967), cert. den. 389 U.S. 1015, [88 S. Ct. 593, 19 L.Ed.2d 661] (1967), and cases cited therein."

Since we are convinced from our appraisal of this record that defendant Waitkus was not denied due process at any stage of the investigation and that the trial court did not err in denying defendant's motion to suppress and return seized property, the judgment of conviction is affirmed.

Affirmed.