**UNITED STATES of America,
Plaintiff,**

v.

**Jesse L. FITZGERALD, Defendant.**

**No. HCR 74–170.**

United States District Court,
N. D. Indiana,
Hammond Division.

March 18, 1975.

John R. Wilks, U. S. Atty., Ft. Wayne, Ind., Joseph S. Van Bokkelen, Asst. U. S. Atty., Hammond, Ind., for plaintiff.

Martin H. Kinney, Merrilville, Ind., for defendant.

## MEMORANDUM OPINION AND ORDER

ALLEN SHARP, District Judge.

On October 10, 1974 the defendant, Jesse L. Fitzgerald, was indicted in three counts which alleged that he wilfully and knowingly attempted to evade and defeat a large part of the income tax due and owing in the calendar years 1968, 1969 and 1970. The defendant entered a plea of not guilty on November 11, 1974 and filed a Motion to Suppress All Evidence on November 29, 1974.

### FACTS

The defendant owned and operated the Parakeet Lounge in Gary, Indiana from 1965 to 1974. In 1971 the Internal Revenue Service began a civil audit of the defendant's books and records. On or about July 20, 1971 the revenue agent conducting the audit referred the case to the Intelligence Division for criminal investigation. On August 24, 1971, both the revenue agent and the intelligence agent appeared, unannounced, at the defendant's tavern in the customer area. They identified themselves and read to him the following statement from a card:

> "As a Special Agent, one of my functions is to investigate the possibility of criminal violation of the Internal Revenue Laws, and related offenses. I would like to ask you some questions. However, first I advise you that under the Fifth Amendment to the Constitution of the United States I cannot compel you to answer any questions or submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything you say may be used against you in any criminal proceedings which may be undertaken. I further advise you that you may, if you wish, seek the assistance of an attorney before responding." Tr. pg. 8, line 10.

Thereafter, the two agents and the defendant proceeded to the basement where certain books and records were turned over to the agent upon oral request.

On November 23, 1971 an interview was scheduled with the revenue agent, an intelligence agent, a shorthand reporter and the defendant. The defendant was telephoned by the intelligence agent and was requested to appear at the office in the Federal Building in Gary, Indiana. This interview was termed a "Q and A Statement under Oath".

Upon presenting himself for the interview, the defendant was again advised of his "rights" as set out above. See Tr. p. 11, line 16 et seq. Subsequently, the defendant was interrogated and a one hour and forty-five minute statement was elicited and recorded by the reporter. Thereafter, on April of 1972 the defendant was given an opportunity to review the statement and sign it. The defendant declined to sign the prepared statement until he could consult an attorney.

### ISSUES

The defendant raised two issues at the hearing: (1) whether the defendant was adequately advised of his rights on August 24, 1971 and November 23, 1971, and (2) whether the Internal Revenue Service was required to furnish the defendant with a written request for records under 26 U.S.C. § 7605(b).

### Adequacy of Warning

■ The first time that the defendant was confronted with both agents, Revenue and Intelligence, it was in the customer area of his own tavern. The defendant was informed that the investigation had become criminal. The factual situation in the tavern meeting closely parallels the facts in United States v. Beckwith, 510 F.2d 741 (1975, D.C.Cir.). In *Beckwith*, Judge Bazelon expressly refuted the argument that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), should apply in non-custodial circumstances during an IRS interview. The defendant

was neither arrested nor detained against his will. He was in a private business establishment which he owned and there were no allegations of police interrogation techniques or any sort of browbeating. *Beckwith, Id.* The Court finds that the warnings given in the tavern complied sufficiently with United States v. Dickerson, 413 F.2d 1111 (7th Cir. 1969), and that the defendant was adequately advised of the dual criminal-civil nature of the visit and no further warnings were required in this instance.

The interview by the same agents on November 23, 1971 at the Federal Building present a different set of facts. The defendant was requested to appear for what was a "Q and A Statement under Oath" which was to be recorded. He was advised of certain of his rights as set out above and then interrogated by a Special Agent and a Revenue Agent with a shorthand reporter recording the proceedings for nearly two hours. It is not disputed that the defendant was at no time in custody and he was free to leave at any time.

The interview, as it was described by the agents who testified at the hearing, bears a striking similarity to the factual situation found in United States v. Oliver, 505 F.2d 301 (7th Cir. 1974). In *Oliver* two Special Agents for the IRS requested that a defendant come to their office, then after he appeared, they read him rights (See *Oliver, Id.* at 303 n. 5), which were even more specific and detailed than the rights given to defendant Fitzgerald. Thereafter, the agents interrogated Oliver for 45 minutes with no reporter present. The main distinction is that the agents in *Oliver* actually turned a person away at the door who purported to have a message from Oliver's attorney. In the instant case, the defendant did not have counsel at the time of the interview and the agents were in a position to intercept any communication and isolate the defendant from outside events. The defendant here, as well as in *Oliver*, was not aware of any outside incidents and the psycho-

logical pressure was the same—perhaps even greater here since the defendant had no lawyer. Also, defendant Fitzgerald was under oath and his statement was being recorded to be used against him at a later date. Again, the defendant was not informed that he could remain silent or that he could have a lawyer present during the interview. Therefore, the defendant Fitzgerald's psychological feelings of compulsion would be at least the same as Mr. Oliver's and perhaps a good deal stronger for the reasons set out above. While the defendant Fitzgerald was not in custody the situation during the interview could certainly be characterized as one in which the defendant's liberty was significantly restrained. *Miranda,* supra, and *Oliver,* supra.

It was plain that the purpose of the agents' interrogation was to develop evidence which would secure his conviction of a crime. There is no contention that the defendant was in custody or physically restrained in any way, and, was in fact free to leave. However, one purpose of the *Miranda* warnings is to make sure that the defendant does not misapprehend the nature of his obligation to respond to the agent's inquiries. United States v. Dickerson, supra, and *Oliver,* supra.

Under these particular circumstances, the Court believes that *Miranda,* as interpreted by the United States Court of Appeals for the Seventh Circuit in *Oliver,* requires the treatment of the statement taken on November 23, 1971 in the Federal Building in Gary, Indiana as though it was compelled during the course of adversary proceeding, and therefore inadmissible as evidence at the defendant's criminal trial. Thus, the defendant's Motion to Suppress is granted as to the November 23, 1971 statement and denied as to any and all other statements before the Court.

The defendant's final contention is that 26 U.S.C. § 7605(b) applies to the "second and third" examination of the defendant's books and records.

The examination of the defendant's books and records as it was described at the hearing was part of a continuous audit during 1971 which was not completed for the years in question. Therefore, since the investigation was still continuing and there was no objection by the defendant, there was only one continuing examination as contemplated by § 7605(b).

Therefore, since the audit had not been completed, the defendant could not be subject to the demands which § 7605(b) was set up to alleviate. Thus, defendant's Motion to Suppress on this basis is denied.