UNITED STATES of America,
Plaintiff,

v.

Burnham MAPP and Burline
Mapp, Defendants.

No. 74–CR–92.

United States District Court,
E. D. Wisconsin.

Feb. 4, 1976.

William J. Mulligan, U. S. Atty. by
Joseph P. Stadtmueller, Asst. U. S.
Atty., Milwaukee, Wis., for plaintiff.

Thomas W. St. John, Milwaukee, Wis.,
for defendants.

DECISION AND ORDER

REYNOLDS, Chief Judge.

Defendants in this action are charged
in a four-count indictment with criminal
tax evasion for the years 1969–1972, in-
clusive, in violation of § 7201 of the In-
ternal Revenue Code, 26 U.S.C. § 7201.
Presently pending before the Court is
defendants' motion to suppress certain
evidence allegedly obtained by the
Government in violation of defendants'
Fifth Amendment right against self-in-
crimination and Sixth Amendment right
to counsel. For the reasons given below,
the motion must be granted and the pro-
posed materials suppressed as requested
by the defendants.

I.

Defendants' motion prays that the
Court suppress "any and all statements,
documents or other evidence of any na-
ture which derived from or were produc-
ed as the result of leads from the ques-
tioning and interrogation of the defend-
ants by agents of the United States
government subsequent to September 29,
1972." The parties were able to stipu-
late to a number of material facts; how-
ever, an evidentiary hearing was deter-
mined to be necessary and was held on
the motion. Subsequently, the Govern-
ment submitted to the Court proposed
findings of fact and conclusions of law.

## II.

From the stipulations of counsel and the evidentiary hearing, the following facts appear. After observing on several occasions a customized Cadillac automobile in the downtown Milwaukee area, a special agent of the Internal Revenue Service's Intelligence Division ran a routine check on the car and found that it was registered to one of the defendants. Using routine request procedures, defendants' joint income tax returns for the calendar years 1969 and 1970 were obtained from the Internal Revenue Service Center in Kansas City, Missouri. Afterwards, the special agent filed a report, commonly referred to as an "information item" with a recommendation that the Intelligence Division conduct an investigation of the taxpayers. All of the foregoing took place prior to October 27, 1971.

On October 27, 1971, it was determined that the Intelligence Division would *not* proceed with the matter, and on January 31, 1972, a revenue agent who had reviewed the information item commenced an audit of the taxpayers. Interviews pursuant to the audit were held with one or both of the defendants on February 2, April 26, May 4, and May 8 of 1972 and took place in the defendants' place of business.

On September 11, 1972, Special Agent Collins, a second special agent of the Intelligence Division, was informed by Vice Squad officers of the Milwaukee Police Department that the defendants dealt in narcotics from their place of business. Collins placed this information, including specific allegations as to the types of narcotics being sold and where they were kept, in a report which he filed with the Information Gathering Retrieval Unit ("IGRU"), a computerized information bank available to all divisions of the Internal Revenue Service. Collins requested a copy of defendants' 1971 tax

return and received it on September 28, 1972. This return was turned over to the Audit Division since Collins had learned of the existence of the audit the previous day.

In the meantime, on September 21, 1972, Collins again spoke with the Milwaukee Vice Squad at the Vice Squad's request because they "knew Collins was accumulating information on Burnham Mapp relative to the NTP (National Traffickers Project)." (Government's proposed findings of fact and conclusions of law, p. 3.) Collins was told that a police informant was "copping" from defendant Burnham Mapp to support his daily heroin habit. The information was placed in another report which was placed in the IGRU file.

On September 29, 1972, the date pressed by defendants in their motion, the audit file of the Internal Revenue Service relating to these defendants was transferred from Audit Group 1203 to Audit Group 1208 whose sole function is to examine returns of taxpayers believed to have income from illegal sources. Audit Group 1208 requested this transfer on the strength of Collins' report of September 21, 1972. At the time of the transfer, the revenue agent conducting the audit had made no determination as to whether defendants' returns were accurate and correct, and had no knowledge that defendants were allegedly involved with drugs.

On October 20, October 24, and November 27, 1972, one or both defendants were interviewed by agents of Audit Group 1208 at defendants' place of business. At no time were defendants advised of their constitutional rights. As a result of these interviews, information was developed which tended to establish that defendants had understated their income for 1969, 1970, and 1971. On November 29, 1971, the defendants' file was forwarded to the Intelligence Division for criminal investigation.[1] Interviews

---

1. Revenue Agent Robert J. Vanden Heuvel testified at the evidentiary hearing that an understatement of income is one of the indicia of fraud which triggers referral of a case from

the Audit to the Intelligence Division. (Transcript of evidentiary hearing held July 10, 1975, at p. 82.)

with the defendants were conducted in the Federal Building by the Intelligence Division on July 19, 1973 and September 25, 1973. At each interview, defendants were given warnings identical to those found to be inadequate in *United States v. Oliver*, 505 F.2d 301, 303 at n. 5 (7th Cir. 1974),[2] except that during the September 25th interview, defendants were further advised of their right to have an attorney present with them if they desired. It is not disputed by the Government that the advice of rights provided to the defendants at the July 19, 1973, interview failed to comply with the law in this circuit as set forth in *United States v. Oliver, supra,* and *United States v. Dickerson,* 413 F.2d 1111 (7th Cir. 1969).

### III.

The facts in this matter have been set forth in some detail since they are both unique and crucial in deciding the issue presently before the Court. This is a "computer" case: At all times relevant to defendants' motion to suppress, incriminating evidence was being fed into IGRU[3] by a special agent of the Intelligence Division, which evidence immediately became available to *every* division of the Internal Revenue Service. The Court, therefore, must reject the Government's attempt to erect artificial barriers between different Internal Revenue Service divisions for the purpose of deciding this motion.

 It is significant that the case against these defendants began with a report by a special agent of the Intelligence Division. That report, even though it was initially rejected, concluded that the Division should conduct an investigation of these defendants. Since the jurisdiction of the Intelligence Division of the Internal Revenue Service is limited solely to criminal matters, *United States v. Dickerson, supra,* at 1112–1113, at least one special agent clearly had a focused criminal inquiry in mind from the beginning. More important is the fact that while audit procedures were being carried out by a revenue agent assigned to Group 1203, Special Agent Collins was gathering incriminating information against these defendants and placing the data in the computerized Information Gathering Retrieval Unit where it would be available to all divisions of the Internal Revenue Service. At the very least, a two-pronged investigation of the defendants was being conducted with a view toward civil liability and with the object of potential criminal prosecution, with the Intelligence Division being involved in the latter since the beginning.

The Government takes the position that since defendants' file was not *formally* transferred to the Intelligence Division until November 29, 1972, *Dickerson* frees the Internal Revenue Service absolutely from the responsibility of advising taxpayers of their rights. In *United States v. Dickerson,* 413 F.2d 1111, 1116–1117 (7th Cir. 1969), the court held that:

> " * * * *Miranda* warnings must be given to the taxpayer by either the revenue agent or the special agent at the inception of the first contact with

---

**2.** The exact warnings at issue in *Oliver* were as follows:

"'As a Special Agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses.

"'In connection with my investigation of your tax liability, I would like to ask you some questions. However, first I advise you that under the Fifth Amendment to the Constitution of the United States I can not compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way.

"'I also advise you that anything which you say and any information which you submit may be used against you in any criminal proceeding which may be undertaken.

"'I advise you further that you may, if you wish, seek the assistance of an attorney before responding.'" *United States v. Oliver, supra,* n. 5 at 303.

**3.** According to testimony taken at the evidentiary hearing, IGRU is now suspended by order of the Commissioner of Internal Revenue. (Evidentiary hearing transcript at p. 18.)

the taxpayer after the case has been transferred to the Intelligence Division. * * * "

In this instance the Government's reliance on *Dickerson* is misplaced. The proper *substantive* inquiry is: "[W]hen [does] the investigative machinery of the government [become] directed toward the ultimate conviction of a particular individual"? *United States v. Oliver*, 505 F.2d 301, 305 (7th Cir. 1974). *Dickerson* does not preclude a finding that a criminal investigation had focused on an accused even though the case has not been formally transferred to the Intelligence Division. On this question, the formal reference of a case to the Intelligence Division is merely evidentiary.

Under all the facts and circumstances of the present case, when defendants' file was transferred to Audit Group 1208, whose sole function is limited to investigation of taxpayers believed to have income from illegal sources I find that in substance the "adversary process" had begun and the Government's investigative machinery began to be directed toward accomplishing the indictment and conviction of these defendants. Incriminating evidence had been filed in a generally accessible computerized information bank. Further proceedings without an admonition of rights allowed the defendants to misapprehend the nature of the continuing inquiry, their obligation to cooperate with the investigation, and the possible consequences of such cooperation. Therefore, without deciding in all cases that the transfer of a taxpayer's file from Audit Group 1203 to Audit Group 1208 triggers the requirements of *Oliver*, I hold that in the present circumstances the defendants should have been properly advised of their rights on September 29, 1972. *United States v. Oliver, supra,* at 304–305; *United States v. Dickerson, supra,* at 1116. The defendants' motion to suppress will be granted.

It is therefore ordered that any and all statements, documents, or other evidence of any nature which derived from or were produced as the result of leads from the interrogation of the defendants by agents of the United States Government subsequent to September 29, 1972, are hereby suppressed.