**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Anthony SICILIA, Defendant-Appellee.**

**No. 72–1366.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1972.

Decided March 1, 1973.

Rehearing Denied April 13, 1973.

---

7. See n. 5.

James R. Thompson, U. S. Atty., Matthias A. Lydon and William T. Huyck, Asst. U. S. Attys., Chicago, Ill., for appellant.

Louis Carbonaro, Chicago, Ill., for appellee.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

PELL, Circuit Judge.

This is an appeal by the Government, pursuant to 18 U.S.C. § 3731, from an order of the district court finding that special agents of the Federal Bureau of Investigation had failed to advise Sicilia of his constitutional rights pursuant to the mandate of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that, therefore, all of "the evidence procured was illegally seized and inadmissible."[1] On February 26, 1970, four F.B.I. agents went to the A & S Cartage Company pursuant to information given them by a confidential informer that one of three Clark fork lift trucks stolen from an interstate shipment was on the premises. Only Agents

---

1. Following an evidentiary hearing on December 9 and 11, 1970, the district court entered an order granting defendant's motion to suppress. On March 13, 1972, another panel of this court determined that it could not rule on the case without findings of fact and conclusions of law. It therefore remanded the case to the district court directing it to make such findings, United States v. Sicilia, 457 F.2d 787 (7th Cir. 1972). On April 21, 1972, the district court entered the required findings of fact and conclusions of law. It is from this order that the Government appeals.

DiStefano and Mieseler went inside. Agent Mieseler, who had not previously been involved in the investigation, had gone on this trip because he had known the president of A & S Cartage, Anthony Sicilia, from a previous but unrelated investigation.

There is a substantial discrepancy between the parties' versions as to what the agents said and did during the initial interview with Sicilia. The agents both testified that they informed him of the nature of the investigation and that he told them that he had recently purchased a Clark fork lift. The agents, according to their testimony, then asked him to sign a consent to search form, which he did. Thereafter they searched the building and found the stolen vehicle. When they returned to the office, the agents then read Sicilia the standard statement of rights (*Miranda*). He refused to sign the waiver or discuss the fork lift truck further.

On the other hand, Sicilia testified, and the district court in its findings of fact found Sicilia's testimony in this respect to be true, that the agents did not inform him of the nature of the investigation, that they did not read him the consent to search form, that he never knowingly signed such a form, and that the only form he signed was what he thought was a receipt for the seized fork lift. Sicilia also testified, and the district court found to be true, that the agents asked him questions about his recent purchases of fork lifts. On the basis of these findings the district court concluded that at the time the agents arrived on the premises "the investigation was no longer a general inquiry into an unsolved crime but began to focus on a particular suspect, to-wit: the defendant. This court finds that the defendant was entitled to be given the Miranda warnings prior to being questioned. . . ."

■ The only citation of authority by the district court in support of its order was the *Miranda* case. We note that the Court stated that the principles there announced "deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." 384 U. S. at 477, 86 S.Ct. at 1629. Here it cannot be contended that Sicilia was the subject of in-custody interrogation. Rather he was at most the subject of limited questioning in the comforting confines of his own office at a company of which he was the chief executive officer. To avoid this obvious limitation on the applicability of *Miranda* to this case, the district court apparently adopted the focus theory enunciated in United States v. Dickerson, 413 F.2d 1111 (7th Cir. 1969).

In *Dickerson*, this court held that once a taxpayer was under criminal investigation he must be given a warning of his constitutional rights as spelled out in *Miranda* before any further questioning can take place. It is from this decision that Sicilia on appeal, and apparently the district court in the proceedings below, extrapolates the theory that once a criminal investigation "focuses" on an individual he must be warned of his constitutional rights. In our view this analysis is inaccurate. The nature of the facts in *Dickerson* limits its general applicability. That case revolves about the distinction between two types of I. R.S. agents: revenue agents and special agents. In general, special agents are concerned with criminal investigations. On the other hand, the audit type of investigations are handled by revenue agents with no particular contemplation of criminal prosecution. There, therefore, is considerable potential for the taxpayer being misled as to the nature of the investigation. In the case of the F.B.I. agents, they are ordinarily associated in the public view with criminal investigation. Specifically in the present case there was no ambiguity in the investigative call on Sicilia—the agents were out to catch a thief. Thus, the underlying rationale for *Dickerson*, the potential for confusion in the mind of the

person being interviewed as to the nature of the inquiry, can be said to justify an expansion of the *Miranda* requirements beyond the in-custody case for the warning to be required.

The potential for confusion not being present in the case before us, we decline to extend the *Dickerson* requirement of *Miranda* warning to it. We find no special risk that Sicilia was misled as to the nature of the investigation. He was neither in custody nor "otherwise deprived of his freedom of action in any significant way." See Orozco v. Texas, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed.2d 311 (1969).

■ At the time the agents initially interrogated Sicilia, there is no indication in the record which would have brought about an in-custody type of situation. Even if the agents had had positive proof that the stolen fork lift was on the premises of A & S Cartage, rather than just the uncorroborated tip of an informant, there would have been no reason to assume that Sicilia, even though he was president of the corporation, had been the individual who had purchased the stolen fork lift, or that he even had any special knowledge of its presence on the premises. The fact that after the F.B.I. agents had specifically identified the Clark fork lift as one of those stolen and Sicilia had stated that he had purchased it, the agents then gave Sicilia a *Miranda* warning is irrelevant to the issue of the first interview. We can only attribute this to some feeling on their part in the nature of an abundance of caution. United States v. Krilich, 470 F.2d 341, 349 (7th Cir. 1972). A probably unnecessary subsequent *Miranda* warning can scarcely create the necessity for such warning in the earlier and different factual situation.

■ Sicilia also argues that the search which discovered the stolen Clark fork lift truck was invalid because he was not warned of his rights similar to a *Miranda* warning. Thus, the district court found that he was not given a consent to search form, even though the Government did produce a consent to search signed by Sicilia who obviously was not an unsophisticated derelict. Sicilia argues that, even if we were to hold this finding of the district court clearly erroneous, we would still have to invalidate the search since the consent to search form itself is not a sufficient warning of *Miranda* rights. On the facts of this case, we hold that there was a valid consensual search of the premises of A & S Cartage and that the discovery of the stolen fork lift was not illegal. As to the initial claim that the warnings required by the Fifth and Sixth Amendments under *Miranda* are a *sine qua non* to a valid consensual search under the Fourth Amendment, this court has clearly rejected such a view. United States v. Young, 471 F.2d 109 (7th Cir. 1972); United States v. Hayward, 471 F.2d 388 (7th Cir. 1972); United States v. Habig, 474 F.2d 57 (7th Cir., filed Jan. 24, 1973).

While some of Sicilia's testimony may raise doubts as to its credibility, we have herein accorded the customary deference to the district court's credibility determination based upon its observation of the witnesses. From that position, the district court chose to disbelieve the two F.B.I. agents and to accept the version presented by Sicilia.

Taking his testimony as true it is illuminating, and dispositive, on the present issue.

Q. Will you relate to the Court what questions they asked you and what answers you gave?

A. They asked me first whether I owned any Clark lift trucks. I said, "Yes."

"Do you own any other type of lift trucks?"

I said, "Yes."

Meisler [sic] did all the questioning at that time. He said, "Did you purchase a Clark lift truck recently?"

And I said, "Yes, about two months ago I did purchase one."

Then Meisler [sic] said, "Can we examine the lift trucks that you have on your docks?"

And I told him, yes, he could see any of them.

At that moment I called up my superintendent, Jim Broderick, and told him that two fellows—I didn't even tell them they were FBI—were coming down to examine all our lift trucks and I told him to show them all of them.

Later on, about five minutes later, he called back and he said one of the trucks that you recently purchased is in a trailer, we're taking it over to our other warehouse.

I told Jim Broderick to show him— to show these agents that one, too. They went down and they were gone for some time—

No other reason appears in the record, and no other reason is suggested or suggests itself, for the F.B.I. agents to ask to look at lift trucks on the docks except that they were in some way involved in a crime or criminal investigation.

Not only did Sicilia consent to such a search by his own testimony, but he also called his superintendent and told him that two men were coming down to look at the lift trucks and that they were to be shown "all of them." It is clear that Sicilia's express consent was both voluntarily and intelligently given. Since no specific warnings were required prior to the search, we hold that the search was proper. We thus do not reach the question of whether the district court's finding of fact relating to the signing of the consent to search form is clearly erroneous and should be set aside since it conflicts with the fact that there was a signed form and a signed receipt for the lift truck even though Sicilia testified, and the district court apparently found, that he signed only one paper that day.

For the reasons given hereinbefore the judgment of the district court is reversed and the case is remanded for further proceedings. While the case is not being remanded for a new trial within the technical meaning of Circuit Rule 23, the development of the factual situation as to one salient aspect of this litigation had progressed sufficiently for us to deem it advisable, and so to order, that the case be reassigned on remand to another judge.

Reversed and remanded.