**UNITED STATES of America,**

v.

**Paul M. BOOTH, Jr.**

**Crim. No. 75–332.**

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 21, 1975.

Mark W. Buyck, Jr., U. S. Atty., D. S. C.; Marvin L. Smith, Asst. U. S. Atty., D. S. C., and Joel Collins, Asst. U. S. Atty., D. S. C., Columbia, S. C., for United States.

Terrell L. Glenn, and Charles Porter, of Glenn, Porter & Sullivan, Columbia, S. C., for Paul M. Booth, Jr.

## ORDER

HEMPHILL, District Judge.

### Statement of Facts

For several months in late 1972 through early 1973, agents of the Office of The Inspector General, United States Department of Agriculture, investigated the allegations of irregularities in the Sumter County Office of the Farmer's Home Administration. The defendant was the County Supervisor in charge of that office during the period in question.

In February 1973, Special Agent Gerald A. Choo, while investigating this Sumter County Office, determined that a black loose leaf binder, which was ordered maintained by the defendant herein in lieu of certain official records, and which contained material pertinent to his investigation, was missing. Upon making inquiry, he learned that Mr. Booth had thrown the binder away after President Nixon had suspended interest credit loans. On March 13, 1973, Mr. Choo traveled to Mr. Booth's offices in Sumter and obtained a signed, sworn statement from defendant in which he stated that he had thrown the binder away.

On February 27, 1975, Mr. Choo and Mr. Joel Collins, Assistant United States Attorney for the District of South Carolina, visited Mr. Booth in Fairfield in preparation for the trial of Edgar E. Owens, the Assistant County Supervisor of the Sumter County Office of the Farmer's Home Administration, and Larry G. Roof, a Sumter County building contractor. At the beginning of the meeting, Mr. Collins showed the defendant a draft of an indictment which had been prepared against him; in addition a copy of Title 18, United States Code § 2071(b) was shown to Booth at that time. The defendant contends, and Mr. Collins denies, that Collins stated that if the defendant's testimony was favorable, i. e., if Booth gave the "proper answers," then the government would reconsider going forward with the indictment. Booth and Collins agree that the word "immunity" was never used and that Collins consistently told the defendant to tell the truth. The defendant then conferred with Mr. T. K. McDonald, Jr., Esq., of the Fairfield County, South Carolina, bar, and asked Mr. Collins to relate the situation then existing to Mr. McDonald. Mr. Collins did so, stating that his primary purpose in being present was to interview Mr. Booth relative to his possible testimony in the Roof-Owens case. Collins also emphasized to McDonald that he (McDonald) "did not know the whole story" behind the prep-

aration of the draft indictment of Mr. Booth. During the questioning which followed, Mr. Collins did not inquire into those facts supportive of the draft indictment; however, he did question defendant on the contents of the March 13, 1973, statement given to Mr. Choo.

In April 1975, the defendant was subpoenaed by the government and testified at the trial of *United States v. Larry Dixon Roof and Edgar E. Owens,* Criminal No. 75–148 (D.S.C.1975), which was being conducted by the Honorable Charles E. Simons, Jr. Roof and Owens were charged with bribery, conspiracy and using false documents in connection with housing loan applications. At that time defendant Booth again admitted, in response to a question propounded by the Assistant United States Attorney, that he had destroyed the binder.

On June 4, 1975, Mr. Booth was indicted for destruction of "a certain loose leaf binder book containing information relating to the receipt and processing of Government Housing Loan applications filed and kept in . . . a public office of the United States, which book was then in the custody of the defendant, in violation of . . ." 18 U.S.C. § 2071(b). On June 19, 1975, defendant entered a "not guilty" plea.

On July 8, 1975, defendant's attorney moved for disqualification of Judge Simons under the provisions of 28 U.S.C. § 455 (December 5, 1974), citing personal knowledge by that jurist of disputed evidentiary facts as to basis of the motion. The hearing was held on July 17, 1975, at which time Judge Simons disqualified himself. On July 24, 1975, the case was assigned to this court for ultimate disposition.

The defendant has moved the court to suppress Booth's statement of March 13, 1973, to Special Agent Choo on the grounds that such warnings as were given at that time were not adequate by the standard enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In addition, he moves for dismissal of the

indictment on the grounds that his Fifth Amendment rights had been violated when he, as a "virtual or putative defendant," had been compelled to testify under subpoena in the Roof-Owens trial. The government opposes both motions. This court heard argument and testimony relevant to these motions (and others disposed of at the time) [1] on August 8, 1975.

### Conclusions of Law

Defendant's motions relied extensively on the landmark decision in *Miranda v. Arizona, supra,* where the Court stated that:

> The constitutional issue . . . [considered herein] is the admissibility of statements obtained from a defendant questioned while in custody or otherwise deprived of his freedom of action in any significant way.

384 U.S. at 445, 86 S.Ct. at 1612.

Such language has led defendant to argue that *Miranda* extends "beyond the station house interrogation" and is now applicable to situations in which the investigation has "focused" on the individual being interrogated. He contends that "focus of the interrogation" is synonymous with "custodial interrogation."

■ In explaining the rationale underlying *Miranda,* Chief Justice Warren, speaking for the majority, stated that the:

> Fifth Amendment privilege . . . serves to protect persons in all settings in which their freedom of action is curtailed in any significant way . . . In-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist . . .

*Id.* at 467, 86 S.Ct. at 1624.

It is this "potentiality for compulsion," *Id.* at 457, 86 S.Ct. 1602, which consti-

tutes the foundation upon which the rest of the opinion is built. *See also Id.* at 465, 86 S.Ct. 1602. It is for this reason that the Court held that:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Id.* at 478, 86 S.Ct. at 1630.

It is therefore apparent that the so-called *"Miranda* warnings" should have been given in this case if, but only if, the defendant was interrogated while deprived of his freedom in such a manner as would reasonably exert inherently compelling pressures on him.

The leading "focus of the investigation" case was *Orozoco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). There the defendant made a statement to four police officers who had entered his home at 4 o'clock a. m. and questioned him in his bedroom. No *Miranda* warnings were given. The statement was held to be inadmissible at trial because the investigation had "focused" on the defendant. The case, however, is easily distinguishable from that at bar because, before beginning their questioning, the officers informed the defendant that he was "under arrest;" i. e., that he was "in-custody." The Court noted that *Miranda* "iterated and reiterated the absolute necessity for officers interrogating people 'in custody' to give the described warnings." *Id.* at 326, 89 S.Ct. at 1097. The Court based its decision, not only the "focus" consideration, but upon the need for warnings whenever the person being interrogated was *"deprived of his freedom of action in any significant way." Id.* at 327, 89 S.Ct. at 1097 (emphasis in original).

---

1. After conducting an in-camera review of Mr. Collins' notes made at his interview of Booth on February 27, 1975, the court finds that, as work product, they are not dis-

coverable. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir. 1974), *rehearing denied* December 20, 1974.

Defendant relies upon three cases from the United States Court of Appeals for the Fifth Circuit as standing for the proposition that, if the investigation had "focused" upon the individual interrogated, that individual was entitled to *Miranda* warnings. In *Bendelow v. United States*, 418 F.2d 42 (5th Cir. 1969), defendant was convicted of interstate transportation of stolen automobiles. Booth notes that the court held that when an officer making a driver's license check on Bendelow discovered alterations in his driver's license ". . . the investigation focused upon Bendelow and a *Miranda* warning was in order before any statement by Bendelow could be admissible." *Id.* at 47. Booth apparently overlooked the next sentence, which stated, "[p]rior to that time no warning was required because *there was no 'in-custody interrogation' as prohibited by Miranda and its progeny* . . ." *Id.*

In *Windsor v. United States*, 389 F.2d 530 (5th Cir. 1968), the defendant, after having been informed that he was not under arrest, was questioned by the police in his motel room. It was later discovered that the questioning officers had previously learned from Windsor's accomplice all the facts of the illegal activity in question. The court stated that:

> The focus of the investigation was clearly and unmistakably upon Windsor while he was being interrogated. *In effect he was already being detained and in custody or being deprived of his freedom in a significant way.* As soon as he made his incriminating oral statement, Agent Hufford left the room, telephoned the United States Attorney and obtained authority to place him under arrest. Sharp had already given the agents sufficient evidence for them to conclude that Windsor was also involved in the interstate transportation of the stolen car. *There was, therefore, probable cause to arrest him.* The Government agents' testimony that Windsor was not a suspect and not under arrest

when questioned in his motel room is belied by the facts of the case. We cannot permit the *Miranda* principles to be so easily frustrated. Windsor was definitely the *central figure* in their investigation and should have been first informed of his right to the presence of counsel, retained or appointed, during the initial interrogation, as well as later when requested to sign the written confession while in jail.

*Id.* at 534 (emphasis added).

The United States Court of Appeals for the Sixth Circuit, in *United States v. Morado*, 454 F.2d 167 (5th Cir. 1972), has elaborated on this view by stating that:

> when a man ceases to be merely a witness in a general investigation, but has been placed "virtually in the position of a defendant," then he must be afforded the full panoply of rights due a defendant in custody. Without intimating whether this circuit will agree with this "virtual defendant" perspective, we note that its emphasis is upon the same factor we have considered to be of prime importance in determining whether or not a man is "in custody," as that term is used in *Miranda:* has the "focus" of the investigation centered upon him? If the investigation in the case at bar had passed beyond the stage of being a general inquiry into an unsolved crime or a suspected conspiracy, and had focused upon Solis as a defendant whom the government planned to indict and against whom it was gathering incriminating evidence, we would face the necessity of embracing or rejecting this rule. But Solis has not argued that such was the tenor of the grand jury proceeding; nor does our review of the record reveal it to have been so.

*Id.* at 173 (Fifth and Sixth Circuit citations omitted).

 The cases are plainly distinguishable. In *Bendelow,* the officer had placed the defendant in custody; those ques-

tions asked *subsequently* were inadmissible. The defendant in this case was not placed in-custody until well after having made the statements in question. In *Windsor,* the defendant was, in effect, "already being detained and in custody or being deprived of his freedom in any significant way;" he also was the "central figure" in the investigation. Here Owens and Roof were the central figures in the investigation at the time of the statements and Booth was neither in-custody, nor deprived of his freedom in any significant way. *See* Annot., 31 ALR3d 565, 595–96 (1970). In *Morado,* the court indicated that if the investigation was a general inquiry into an unsolved crime or a suspected conspiracy, and had not focused on the individual interrogated, then *Miranda* warnings were not required. Such is the case here as to the March 1973 statement.

Booth was questioned "in the comforting confines of his own office at . . . [an institution] of which he was the chief executive officer." *United States v. Sicilia,* 475 F.2d 308, 310 (7th Cir. 1973). The United States Court of Appeals for the Fourth Circuit has held that where a defendant is not under arrest or in custody and where the government agent refrains from threats, coercion or any form of deception, any statement to the agent may properly be admitted into evidence. *United States v. Browney,* 421 F.2d 48, 51 (4th Cir. 1970), *cited with approval in United States v. Ramantanin,* 452 F.2d 670, 672 (4th Cir. 1971). Similarly, the court ruled that a signed statement given by a defendant in his own office to a single agent for the Interstate Commerce Commission was properly received into evidence at trial. *United States v. Webb,* 398 F.2d 553 (4th Cir. 1968). In explaining its result, the court said:

> Webb was not the subject of a "custodial interrogation" at any time during this investigation. He was never "in custody." In fact all questioning took place in his own office, often in the presence of his secretary, and by a single ICC agent without the power to

arrest or detain him. The interrogation was of brief duration and there is not the slightest hint of any overbearing, threat, trickery or deception on the agent's part. When presented with the prepared statement, Webb was told that he did not have to sign. Although he took the stand in his own defense, his testimony in no way controverted the ICC agent's version.

> . . . [R]ather, the question is whether to extend the *Miranda* doctrine to this non-custodial interrogation which was not actually or potentially coercive or intimidating.

> We do not interpret the *Miranda* mandate so broadly as to include these circumstances. To equate them to a *Miranda* situation would be to ignore the language and the underlying concept of the Court's opinion.

*Id.* at 557. This court is of the opinion that Special Agent Choo's actions in March of 1973 were entirely proper; the statement is admissible at the trial in chief of defendant Booth.

■ This finding disposes of one of defendant's other contentions; i. e., that the testimony of Booth at the *Roof/Owens* trial should be suppressed as "fruits of the poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Supreme Court has stated that the proper test to employ to insure compliance with this doctrine is to ask:

> Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Id.* at 487–88, 83 S.Ct. at 417. It is apparent that the "primary illegality" or "taint" (i. e., the "poisonous tree") must be shown before "evidence . . . [which] has been come at by exploitation" (i. e., the "fruits") can be objectionable. In this case, acquisition of the March 1973 statement was proper; hence there is no "poisonous tree," nor can

there be any "fruits" thereof. This argument of defendant is rejected.

Defendant's final contention is that, as a "virtual or putative defendant" at the *Roof/Owens* trial, he should not have been: 1) subpoenaed to appear before the court, 2) presented as a government witness, or 3) questioned concerning the subject matter of the now pending indictment against him. Defendant argues that such a "gross denial" of a putative defendant's constitutional rights is so glaring as to warrant dismissal of the indictment.

Defendant relies on *United States v. Mandujano*, 496 F.2d 1050 (5th Cir. 1974), where the testimony of a putative defendant who was questioned before a Grand Jury prior to being given adequate *Miranda* warnings was suppressed. The court looked at the totality of the circumstances and noted that the questioning of the defendant smacked of "entrapping [the defendant] to either incriminate himself or commit perjury," *Id.* at 1055. This practice was categorized as one which goes *"beyond the pale of permissible prosecutorial conduct." Id.* at 1058 (emphasis in original). The court concluded that the entire proceeding was, in the absence of proper *Miranda* warnings, a violation of defendant's due process rights under the Fifth Amendment. *Id.*

██ The case, along with its companion *United States v. Rangel,* 496 F.2d 1059 (5th Cir. 1974) involved entrapment carried on by the prosecuting authority; no similar situation exists here. Both cases involve testimony before a secret Grand Jury hearing, not, as here, at an open public trial. In this case there has been no allegation of, nor is there evidence of, conduct which goes "beyond the pale of permissible prosecutorial conduct." The court stated "that Mandujano was a putative defendant *in custody* and was entitled to *Miranda* warnings."

496 F.2d 1050, 1055 (emphasis added). Here defendant was under the protection of the court; in no sense of the word was he in custody at the time of the trial. Even if the cases were not distinguishable, they need not be deemed controlling in a different circuit. *See, e. g., United States v. Nickels,* 502 F.2d 1173 (7th Cir. 1974), where that court "respectfully disagree[d]" with the results reached in the Fifth Circuit. *Id.* at 1177.

██ This court need not, however, attempt to justify deviation from the rule announced by the Fifth Circuit, for the United States Court of Appeals for the Fourth Circuit, in *United States v. Anderson,* 481 F.2d 685 (4th Cir. 1973), *aff'd on other grounds* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 21 (1974), has set forth the law applicable to this factual situation. In *Anderson,* Judge Russell stated that:

> Testimony of a defendant, given at another trial or hearing, is admissible, and this is true whether the defendant elects to testify in his own defense or not . . . and whether he appeared as a defendant or witness . . . . It is of no moment whether the former trial was for the same offense or for some other . . . or whether the trial was a criminal or civil proceeding . . . .
>
> . . . *Miranda* applies to statements procured during "custodial police interrogation" and has no application to voluntary testimony such as that involved here, given in another judicial hearing.

*Id.* at 696. This statement of applicable law is controlling in this case.

In view of the foregoing authorities, it is the judgment of this court that the motion to dismiss the indictment is denied. Furthermore, the motions to suppress the statement of March 13, 1973 and the trial testimony is denied.

And it is so ordered.