**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George R. DRESKE, Defendant-Appellant.**

No. 75–2013.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1976.

Decided June 8, 1976.

Michael O. Bohren, Milwaukee, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty., Thomas E. Martin, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and PERRY, Senior District Judge.*

PERRY, Senior District Judge.

George Roman Dreske, defendant below, appeals his conviction and sentence for failing to deposit withheld Federal Insurance Contributions Act [hereinafter "F.I.C.A."] taxes in a separate bank account in violation of 26 U.S.C. § 7215, an Internal Revenue Code provision which penalizes an employer's unlawful failure to comply with another Internal Revenue Code provision, 26 U.S.C. § 7512,[1] pertaining to the establishment of special trust accounts to which both F.I.C.A. taxes and employees' withheld federal income taxes are to be deposited.

Dreske contends that the District Court erred by denying Dreske's motion to strike certain testimony regarding self-incriminating admissions made by Dreske to an agent of the Collection Division without *Miranda* warnings, and by denying Dreske's motion to admit as evidence certain exhibits and testimony which would have established defenses to the charges. Dreske also contends that the sentence imposed by the District Court was excessive. Pertinent facts are as follows:

1. During the period December 12, 1973 through January 14, 1974, Dreske was President of Clinicare Corporation [hereinafter "Clinicare"], a Wisconsin Corporation. Clinicare was an employer of labor required under the provisions of the Internal Revenue Code to collect, account for, and pay

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

1. 26 U.S.C. § 7215 and 26 U.S.C. § 7512 are set out in the Appendix to this opinion.

over to the United States F.I.C.A. taxes and federal income taxes withheld from employees' wages. Clinicare did business through the Wyalusing and Eau Claire Academies in Wisconsin. These academies provide residential treatment facilities for emotionally-disturbed children and are licensed, through Wisconsin statute, to provide such care by the Wisconsin Department of Health and Social Services. The children in each academy are placed there as wards of the court, and Clinicare was accountable to the court having custody of the child, and to the Wisconsin Department of Health and Social Services. Clinicare was compensated for the care it provided with a combination of 48% state and 52% federal funds. The program of reimbursement for the care was established under the 1965 amendments to the Social Security Act, commonly known as the AFDC–I Program, which was adopted by the State of Wisconsin. The federal share is paid to the state agency administering the program (in the case at bar, the Wisconsin Department of Health and Social Services) and is then distributed to the counties which paid Clinicare for its services. Under this program, the state or county agency having custody of a child and placing the child with an institution is reimbursed 100% for the cost of care by the State of Wisconsin. During the period in question, payments to Clinicare were administered pursuant to Administrative Rule No. PW–PA 20.11 of the Administrative Manual of the Department of Health & Social Services of the State of Wisconsin, which in pertinent part states:

> Payment on behalf of a child in a foster home or child-caring institution pursuant to s. 49.19(10) Wis.Stats., shall be made in arrears and not later than the tenth day of the month following the month for which payment is made.

Neither the state nor counties adhered to this rule, however, and checks were received by Clinicare as late as the 26th day of the month. Both county and state units admitted non-compliance, but still did not alter their payment procedures. The payment problem was ultimately rectified in the 1975–1977 budget of the State of Wisconsin which provided for payment thirty days in advance.

2. For the quarters ending December 31, 1972, March 31, 1973, June 30, 1973, and September 30, 1973, Clinicare was a corporation which was required, pursuant to the provisions of the Internal Revenue Code and its regulations, to deposit with the Federal Reserve Bank (or through a local bank to the Federal Reserve Bank) within three banking days following each pay period F.I.C.A. taxes and federal income taxes withheld for those pay periods. Clinicare employees were paid on the 7th and 20th of each month. Forms 941 (Employment Tax Returns) were due for the four quarters respectively as follows:

| Quarter Ending | Return Due | Return Filed |
|---|---|---|
| 12/31/72 | 1/31/73 | 1/31/73 |
| 3/31/73 | 4/30/73 | 4/30/73 |
| 6/30/73 | 7/30/73 | 8/15/73 |
| 9/30/73 | 10/31/73 | 12/7/73 |

3. Internal Revenue Officer [hereinafter "Agent"] Marvin C. Hilke is assigned to the Collection Division of the Internal Revenue Service [hereinafter "I.R.S."]. Agent Hilke had numerous contacts with Dreske prior to the two contacts at issue. Four checks of Clinicare for payment of withholding taxes were dishonored for the quarter ending June 30, 1973. Agent Hilke was first assigned to the matter involving delinquent employment tax payments of Clinicare on or about August 1, 1973. Soon thereafter he advised Dreske that Clinicare was required to make deposits of withholding and other taxes, and that failure to do so could result in criminal prosecution against officers of the corporation. Agent Hilke next contacted Dreske in person at Dreske's office on August 16, 1973. Agent Hilke advised Dreske that a bill for withholding taxes was due and owing, and he requested payment. He also informed Dreske that as a consequence of Clinicare's issuance of bad checks, the I.R.S. would require payment in the form of a certified check or a cashier's check.

4. On August 20, 1973, Mr. Harold M. Bell, Group Manager, Collection Division,

Internal Revenue Service, Milwaukee, Wisconsin, served Form L54 personally upon Dreske. The effect of the issuance of Form L54 is to inform the recipient that he is a bad payer and that he would be wise to take precautions. Form L54 is also issued for the purpose of giving the recipient an opportunity to make deposits before the I.R.S. begins to impose seizures.

5. On August 28, 1973, Dreske informed Agent Hilke that he would secure additional capital to cover corporation liabilities by September 5, 1973. On September 5, 1973, Dreske telephoned Agent Hilke, who told Dreske that if Clinicare did not make payments of delinquent taxes then due and owing, it might be necessary for the I.R.S. to seize corporate assets. On October 12, 1973, Agent Hilke sent Dreske an L31 letter, that is, a final notice before seizure. There were other subsequent contacts in which Dreske made various representations that payment would be made in full on outstanding debts.

6. On December 12, 1973, Agent Hilke personally served Form 2481, entitled "Notice To Make Special Deposits Of Taxes", upon Dreske, who was hurriedly leaving his office when Agent Hilke encountered him. Dreske told Agent Hilke to give the notice to Dreske's bookkeeper. Agent Hilke then emphasized the importance of Form 2481 by stating that he was required to give the notice to Dreske personally. Agent Hilke then informed Dreske that as a consequence of Clinicare's failure to make deposits, the corporation would be required to open a special trust account and make deposits into that account. Agent Hilke indicated that payments into the trust account would be required after the next payday. The form given to Dreske specified that an actual deposit into the trust account would be required two days after the payroll. Agent Hilke indicated the portion on the form that specifically required Dreske to establish a trust account. Agent Hilke told Dreske that the opening of the account and the deposit of funds into the trust account would have to be done immediately. Agent Hilke advised Dreske that failure to open

the trust account and failure to deposit withholding taxes into the account could subject him to criminal prosecution.

7. Agent Hilke also told Dreske that Clinicare would be required to file monthly returns on a Form 941M, but that Dreske need not file a Form 941M return for December,—since that was the last month of the quarter,—but would be required to begin such a filing with the month of January. Agent Hilke gave Dreske the printed forms for the months of January, February, and March with the schedule attached for listing each employee's name on it. Dreske wrote "Receipt of original acknowledged" on a copy of Form 2481 and signed his name on the original Form 2481. Agent Hilke left the original Form 2481 with Dreske and Dreske then left his office.

8. On January 3, 1974, Agent Hilke contacted Dreske again. The inquiries on this date were similar to numerous previous inquires. Agent Hilke informed Dreske of Clinicare's outstanding indebtedness and a lien filing, and that payment should be made by a certain date.

9. The following chart sets forth the dates wages were paid, the dates deposits were required to be made pursuant to Form 2481 (Notice To Make Special Deposits Of Taxes), the amount of deposits required, and the dates the deposits were made.

| Date Wages Paid | Date Deposit Required | Amount of Deposit Required | Date Deposit Made |
|---|---|---|---|
| 12/21/73 | 12/26/73 | $ 9,912.29 | (not deposited into trust account) |
| 1/7/74 | 1/9/74 | 11,267.43 | 1/23/74 |

10. On January 14, 1974, Agent Hilke contacted Dreske by telephone and asked him two questions: (1) Had he opened the special account as required by the Form 2481 notice served upon him on December 12, 1973? and (2) Had he made deposits to the special account, as further required by the notice served December 12, 1973? Dreske replied in the negative to each question.

11. Clinicare did not open the separate bank account (special fund in trust for

United States under 26 U.S.C. § 7512) as required by Form 2481 (Notice To Make Special Deposits Of Taxes) until January 23, 1974, when such an account was opened at the West Allis State Bank.

12. Agent Hilke testified as follows: Form 2481 had to be submitted for the concurrence of the Intelligence Division before actual service upon Dreske; at this time, the case was still in the files of the Collection Division and not in the files of the Intelligence Division; submitting Form 2481 to the Intelligence Division is in the nature of obtaining a clearance or concurrence, rather than an actual transmittal of the case to the jurisdiction of the Intelligence Division; the case was not physically transferred to the Intelligence Division until after January 14, 1974, subsequent to the contacts at issue on December 12, 1973 and January 14, 1974; no one in the Intelligence Division directed Agent Hilke to gather facts to be used in any subsequent criminal prosecution.

13. Special Agent Kenneth S. Thompson testified as follows: he had served as supervisory criminal investigator or group manager with the Intelligence Division of the I.R.S., and is personally familiar with the procedures followed by the I.R.S. when it investigates potential trust fund violations (26 U.S.C. § 7215); a prerequisite to criminal charges being brought under 26 U.S.C. § 7215 is the issuance of a Form 2481; the Chief of the Intelligence Division concurs in the issuance of a Form 2481 if he agrees that the matter has a reasonable promise of successful prosecution if a violation does subsequently occur; yet, at the time he makes such a review, no violation of Section 7215 has occurred; no instructions are given to the Collection Division personnel by the Intelligence Division from the time the Chief of Intelligence has concurred in the issuance of a Form 2481 until such time as a case might be received from the Collection Division; there is no procedure in the Intelligence Division Manual for the Collection Division to report to the Intelligence Division on the taxpayer's further performance, and the matter is ended as far as the Intel-

ligence Division is concerned unless the file is subsequently transmitted from the Collection Division to the Intelligence Division.

14. Special Agent Charles Howe of the Intelligence Division testified as follows: as acting chief of that division he concurred in the issuance of Form 2481 to Dreske; his decision was based solely upon review of a document entitled "Report of Trust Fund Tax Violations" (Form 2674); Dreske's file was maintained in the Collection Division and was not transferred to the Intelligence Division to assist Special Agent Howe at arriving at a decision whether or not to concur in the issuance of Form 2481; therefore he did not review any of the work papers pertaining to Dreske's case, nor transcripts of accounts pertaining to the delinquency of Clinicare, nor certificates of assessments and payments, nor statements Dreske made during the course of contacts between Agent Hilke and Dreske; he examined the size of the deficiency and Clinicare's history of not making proper deposits; this review was for the purpose of assuring that Form 2481 would not be issued indiscriminately to taxpayers in view of the substantial inconvenience which results from the issuance of the form; the Intelligence Division has no ultimate control or authority over whether a Form 2481 will be issued; the actual determination is made by the District Director of the I.R.S., not by anyone in the Intelligence Division; in fact, if the Intelligence Division did not recommend and concur in the issuance of Form 2481, Form 2481 could still be issued to the taxpayer. Special Agent Howe corroborated the testimony of Messrs. Hilke and Thompson to the effect that the Intelligence Division gave no instructions to the Collection Division as to how the matter should be investigated, if at all. Special Agent Howe testified that the Intelligence Division had no role in the matter prior to the ascertainment on January 14, 1974 that Dreske had not opened the special account nor made deposits therein.

15. Ross B. MacDonald testified as follows: he was a financial consultant to Dreske in Clinicare, with major responsibil-

ities in significant financial affairs of the corporation; the first time he saw Form 2481 was the second week in January, around January 7th, 1974, when Dreske brought it into Mr. MacDonald's office; Dreske requested that Mr. MacDonald write an inquiry to a bank in Eau Claire concerning the opening of a trust account, and on January 23, 1974 an account was opened, not in Eau Claire, but with the West Allis State Bank.

16. Special Agent John Wagner of the Intelligence Division of the I.R.S. testified as follows: he was assigned to Dreske's case after it had been transmitted from the Collection Division and received in the Intelligence Division on January 17, 1974; he first interviewed Dreske on January 21, 1974, at which time he advised Dreske of his constitutional rights; he informed Dreske that he was investigating Dreske's failure to establish a special trust account for taxes withheld by Clinicare and the failure to make deposits of withheld taxes for the payrolls of December 21, 1973, and January 7, 1974; he asked the following questions of Dreske and Dreske gave the following answers:

I asked him if he had opened the special trust account and he said no, that MacDonald had done it. I asked Mr. Dreske if he had made deposits for the payroll of December 21st. He said no, that it had not been done. I asked him if the deposits of the withheld taxes for the payroll of January 7th had been deposited. He said that he didn't know.

\* \* \* \* \* \*

. . . I had showed Mr. Dreske a copy of the Form 2481, and asked if the signature on that copy was his. He answered yes, it was. He also answered yes, when I asked him if he understood the form and whether it had been explained to him or not. I also asked Mr. Dreske . . . if he knew he was to open a separate bank account for the deposit of payroll taxes and he indicated yes.

Special Agent Wagner testified further that Dreske stated in effect that his understanding of what his legal obligations were was at variance with the requirements otherwise stated on Form 2481.

17. Dreske testified in his own behalf. He blamed two floods for many of his accounting and financial difficulties and explained his admissions to Agent Hilke on January 14, 1974, as intending to mean that he personally had not established the trust account, although his accountant should have done so.

18. On October 9, 1974, Dreske was charged in a two-count information with failing to deposit employees' withheld F.I. C.A. taxes in a separate bank account in violation of 26 U.S.C. § 7215. He pleaded not guilty, waived a jury trial, and on July 10, 1975, was found guilty and was convicted on both counts. On October 22, 1975, District Judge Reynolds sentenced Dreske to six months of imprisonment as to each count, to be served concurrently, and to a $1,000 fine as to each count. Judge Reynolds suspended execution of the sentence as to imprisonment and placed Dreske on probation for two years.

On October 28, 1975, Dreske appealed his conviction and his sentence.

I.

■ The principal issue presented here is whether a taxpayer must be advised of his constitutional rights against self-incrimination before he is questioned by an agent of the Collection Division of the Internal Revenue Service prior to the formal referral of the tax investigation to the Intelligence Division for an investigation of a possible criminal violation of the internal revenue laws.

Dreske contends that the admissions made by him to Agent Hilke during the person-to-person interview on December 12, 1973 and during the telephonic interview on January 14, 1974 were made without prior warning of his Fifth Amendment right against self-incrimination and that these admissions, made to the District Court through the testimony of Agent Hilke, were therefore erroneously admitted into evidence by the court.

Dreske asserts that he was placed in the *functional* and therefore the legal equivalent of the *Miranda* situation when he made self-incriminating admissions to Agent Hilke on January 14, 1974. This is so, says Dreske, because in good faith he misapprehended the nature of Agent Hilke's inquiry, his own obligation to respond thereto, and the possible consequences of his cooperation. The practical effect of this good-faith misunderstanding, Dreske argues, resulted in a psychological compulsion to provide information that could be used ultimately to convict him, much as placing a suspect under physical restraint leads to similar psychological compulsions.

■ Dreske argues that the adversary proceeding against him commenced, not when his file was formally transferred to the Intelligence Division, but when he was served with Form 2481. The rationale of his argument is as follows: (1) because the head of the Intelligence Division was required to concur in the issuance of Form 2481 prior to personal service thereof upon Dreske, the involvement of the Intelligence Division in Dreske's investigation had become so pervasive at the time of said service that Agent Hilke should have given Dreske, prior to questioning him on January 14, 1974, the warnings called for in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) although the Collection Division's responsibility is theoretically restricted to civil investigations, the fact of the matter is that in this instance Agent Hilke continued his investigation even after he suspected that Dreske might have committed a criminal offense; (3) thus, the nature of the tax investigation vis-a-vis Dreske changed from civil to criminal when he was served with Form 2481 on December 12, 1973.

Dreske places great reliance on *United States v. Dickerson,* 413 F.2d 1111 (7th Cir. 1969) and *United States v. Oliver,* 505 F.2d 301 (7th Cir. 1974), to support both the proposition that police-type custody is not a *sine qua non* for determining whether or not *Miranda* warnings must be given, and

his contention that when he was questioned by Agent Hilke, the Government was attempting to develop evidence for the purpose of ultimately convicting him so that *Miranda* warnings should have been given to enable him to make an intelligent decision as to the assertion or the waiver of his Fifth Amendment rights. Dreske's reliance is misplaced.

In the first place, this court in *Dickerson* clearly pointed out the disruptive effect which a blanket requirement of *Miranda*-type warnings might have if such requirements were applied to all civil investigations. More important, the *Dickerson* holding applied explicitly only to a situation which exists *after* a taxpayer's case has been transferred to the Intelligence Division.[2] Here, Dreske's case had not been transferred to the Intelligence Division at the time he was questioned by Agent Hilke of the Collection Division. Further, we recently held that the nature of the facts in *Dickerson* limits its general applicability and that *Dickerson* is not to be read as adopting generally the approach that *Miranda* warnings are necessary whenever an investigation focuses on a suspect. *United States v. Sicilia,* 475 F.2d 308, 310 (7th Cir. 1973), *cert. denied,* 414 U.S. 865, 94 S.Ct. 123, 38 L.Ed.2d 117. *See United States v. Jeffers,* 520 F.2d 1256, 1268 (7th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656. In *Sicilia* we refused to extend *Dickerson* to require Federal Bureau of Investigation special agents to give *Miranda* warnings in connection with a request to the defendant for permission to search his company's premises for a stolen fork lift truck. We might also have pointed out in *Sicilia* that until after the lift truck was actually discovered on the premises, the investigation had not progressed to the point at which the special agents were prepared to make an accusation against Sicilia. Likewise in the case at bar, we should point out two significant facts: (1) at the time the acting chief of the Intelligence Division concurred in the issuance of Form 2481, he had no information that a crime might have

---

2. *Dickerson, supra,* 413 F.2d at 1116–17 & n. 10.

been committed by Dreske, and (2) when Agent Hilke questioned Dreske on January 14, 1974, he had no reason to know that a crime might have been committed until Dreske told him that he had neither opened the special account nor made any deposits. After January 14th, Dreske was given complete *Miranda* warnings.

Dreske's reliance upon *United States v. Oliver,* 505 F.2d 301 (7th Cir. 1974), is also misplaced, for in *Oliver* a criminal investigation had commenced several months before the defendant was questioned, and there was no ambiguity about the mission of the interrogating special agents.

Subsequent to oral arguments in this case, the Supreme Court held that self-incriminating statements made by a taxpayer to Internal Revenue Service special agents during the course of a non-custodial interview in a criminal tax investigation were admissible against him in an ensuing criminal tax prosecution even though he was not given warnings required by *Miranda v. Arizona, supra. Beckwith v. United States,* —— U.S. ——, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). *Beckwith,* of course, has undermined the vitality of *Dickerson* and *Oliver,* and has given cogent approval to those cases which held, prior to the time the trial in this case began, that I.R.S. agents are not required to give *Miranda* warnings absent actual physical custody at the time of interrogation.[3]

For the foregoing reasons we must conclude that the District Court did not err by denying Dreske's motion to strike the admissions made by Dreske to Agent Hilke.

## II.

It is a defense to this charge for a defendant to show that his failure to comply with the provisions of § 7512(b) was due to

circumstances beyond his control. 26 U.S.C. § 7215(b)(2).[4] Dreske contends that he attempted to establish at trial that a defense to § 7215(b)(2) existed in that Clinicare experienced a lack of funds immediately prior to the payroll dates alleged in the information because of the negligence and malfeasance of local governmental entities which administered the federal AFDC–I funds, and that this failure to pay to Clinicare monies owed for services rendered,—coupled with the fact that this was Clinicare's only source of income,—presented a *prima facie* defense. Dreske contends that the District Court misconstrued § 7215(b)(2) in that the court apparently held that "circumstances beyond control" does not include lack of funds immediately prior to the payment of the payroll. In an effort to establish this defense, Dreske offered certain exhibits and embellishing testimony. The court sustained the Government's objection thereto based on relevancy. Dreske contends that the refusal of the court to admit the aforesaid exhibits and testimony into evidence constitutes reversible error.

■ We agree with the Government that lack of funds,—whether occurring immediately prior to the payment of the payroll or subsequent thereto,—does not constitute a defense to prosecution under 26 U.S.C. § 7215(b)(2). *See, e. g., United States v. Plotkin,* 239 F.Supp. 129 (E.D.Wis.1965). Hence we conclude that the District Court did not err in denying Dreske's motion to admit the aforesaid exhibits and testimony into evidence.

Dreske further contends that the District Court erred by not considering the merits of Dreske's defense that circumstances beyond the control of Dreske existed in that Dreske acted erroneously in good faith upon Agent Hilke's confusing advice. The substance of this argument runs as follows: (1)

---

**3.** A nearly-exhaustive collection of such cases is set out in *United States v. Jaskiewicz,* 433 F.2d 415, 418 nn. 1 through 8 (3rd Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632. Several other such cases are cited in *Beckwith, supra,* —— U.S. ——, 96 S.Ct. at 1614 n. 1.

**4.** 26 U.S.C. § 7215(b)(2) reads:

(b) Exceptions.—This section shall not apply—

\* \* \* \* \* \*

(2) to any person, if such person shows that the failure to comply with the provisions of section 7512(b) was due to circumstances beyond his control.

Agent Hilke gave confusing instructions to Dreske when he served Form 2481 on him on December 12, 1973 in that Agent Hilke told him that the entire procedure was not to become operative until January of 1974, and when Dreske tried to contact Agent Hilke for a further explanation of Form 2481, Agent Hilke could not be reached; (2) Agent Hilke instructed Dreske that the trust account mechanism for the deposit of Clinicare's withholding tax was to begin immediately, but he also said that the monthly filing of the Form 941M withholding tax return need not be implemented until January, 1974; (3) Dreske had Form 2481 served upon him as he was hurriedly leaving his office and Agent Hilke told Dreske at that time that he would see him again to explain Form 2481; (4) because of the foregoing, Dreske did not fully understand the full import and meaning of the form served on him; rather, relying on the December 12, 1973 statement of Agent Hilke, Dreske did not immediately act to implement the trust account procedure but nonetheless paid Clinicare's withholding tax directly to the I.R.S. Kansas City Service Center for the December 21, 1973 payroll.

When he was subsequently questioned by Special Agent Wagner of the Intelligence Division after Dreske's case had been transferred to the Intelligence Division, Dreske claimed that he misunderstood his obligations as they were stated to him by Agent Hilke and as they were stated on Form 2481. The District Court, however, found as follows:

> . . . the taxpayer received his notices and was told to open an account and failed to do so. There is no exception to the court that comes within 7215(b).
>
> . . .

If this finding of fact by the trial court was not clearly erroneous, we must sustain the finding. Rule 52(a), Federal Rules of Civil Procedure. We have examined the record carefully and we find no reason to conclude that the aforesaid finding was clearly erroneous. Further, Dreske concedes that the offense of which he was convicted is not an offense involving willfulness (Brief of Appellant at 33, 35, 36). We agree with the Government that Dreske's state of mind does not provide a defense to the § 7215 charge. *See, e. g., United States v. Gorden,* 495 F.2d 308, 310 (7th Cir. 1974), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59. We conclude, then, that no error was committed by the District Court as alleged hereinbefore.

### III.

Finally Dreske contends, in the alternative, that his sentence is excessive and that it should be reduced to a fine alone. We recognize that a sentence of imprisonment places upon a business man a stigma that does not vanish quickly. *See* "White-Collar Justice: A BNA Special Report On White-Collar Crime," 44 U.S.L.W. No. 40, Part II, April 13, 1976, at 5–6. Nonetheless, in this instance was feel that the District Judge actually showed leniency rather than inexorability when he ordered probation. The sentence was authorized by statute and we simply cannot agree with Dreske that the District Judge manifestly abused his discretion in imposing a fine and a term of suspended imprisonment. Nor can we agree with Dreske's contention that his offense did not cause any damage to society (Brief of Appellant at 35).

For the foregoing reasons, the District Court's judgment and sentence are each Affirmed.

### APPENDIX

26 U.S.C. § 7512 reads as follows:

§ 7512. *Separate accounting for certain collected taxes, etc.*

(a) General rule.

Whenever any person who is required to collect, account for, and pay over any tax imposed by subtitle C or by chapter 33—

> (1) at the time and in the manner prescribed by law or regulations (A) fails to collect, truthfully account for, or pay over such tax, or (B) fails to make deposits, payments, or returns of such person, of any such failure,

(2) is notified, by notice delivered in hand to such person, of any such failure,

then all the requirements of subsection (b) shall be complied with. In the case of a corporation, partnership, or trust, notice delivered in hand to an officer, partner, or trustee, shall, for purposes of this section, be deemed to be notice delivered in hand to such corporation, partnership, or trust and to all officers, partners, trustees, and employees thereof.

(b) Requirements.

Any person who is required to collect, account for, and pay over any tax imposed by subtitle C or by chapter 33, if notice has been delivered to such person in accordance with subsection (a), shall collect the taxes imposed by subtitle C or chapter 33 which become collectible after delivery of such notice, shall (not later than the end of the second banking day after any amount of such taxes is collected) deposit such amount in a separate account in a bank (as defined in section 581), and shall keep the amount of such taxes in such account until payment over to the United States. Any such account shall be designated as a special fund in trust for the United States, payable to the United States by such person as trustee.

(c) Relief from further compliance with subsection (b).

Whenever the Secretary or his delegate is satisfied, with respect to any notification made under subsection (a), that all requirements of law and regulations with respect to the taxes imposed by subtitle C or chapter 33, as the case may be, will henceforth be complied with, he may cancel such notification. Such cancellation shall take effect at such time as is specified in the notice of such cancellation. (Added Pub.L. 85–321, § 1, Feb. 11, 1958, 72 Stat. 5.)

26 U.S.C. § 7215 reads as follows:

§ 7215. *Offenses with respect to collected taxes.*

(a) Penalty.

Any person who fails to comply with any provision of section 7512(b) shall, in addition to any other penalties provided by law, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than one year, or both, together with the costs of prosecution.

(b) Exceptions.

This section shall not apply—

(1) to any person, if such person shows that there was reasonable doubt as to (A) whether the law required collection of tax, or (B) who was required by law to collect tax, and

(2) to any person, if such person shows that the failure to comply with the provisions of section 7512(b) was due to circumstances beyond his control.

For purposes of paragraph (2), a lack of funds existing immediately after the payment of wages (whether or not created by the payment of such wages) shall not be considered to be circumstances beyond the control of a person. (Added Pub.L. 85–321, § 2, Feb. 11, 1958, 72 Stat. 6.)